105 N.J. Super. 484 (1969)
253 A.2d 188
DAVID F. SNOW AND BEATRICE SNOW, HIS WIFE, ROBERT BUSWELL AND HAZEL BUSWELL, HIS WIFE, JERRY F. CROWLEY AND FRANCES M. CROWLEY, HIS WIFE, JOHN S. ULLMAN AND JESSIE L. ULLMAN, HIS WIFE, ALBERT B. LETH, ROBERT LEMKE AND JEAN M. LEMKE, HIS WIFE, AND JOHN T. MLADJEN, FOR THEMSELVES AND FOR ALL OTHER RESIDENTS, TAXPAYERS AND ELECTORS OF THE BOROUGH OF AVALON SIMILARLY SITUATED, PLAINTIFFS,
v.
EDGAR V.H. BELL, AS A COMMISSIONER OF THE BOROUGH OF AVALON, W. DANIEL KEEN, AS A COMMISSIONER OF THE BOROUGH OF AVALON, ELLSWORTH ARMACOST, AS A COMMISSION OF THE BOROUGH OF AVALON, VIRGINIA OLER, AS BOROUGH CLERK OF THE BOROUGH OF AVALON, AND THE BOROUGH OF AVALON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 8, 1969.
*485 Mr. Morton I. Greenberg for plaintiffs.
Mr. George H. Hohweiler for defendants Edgar V.H. Bell, W. Daniel Keen, Ellsworth Armacost and Virginia Oler (Messrs. Orlando & Cummins, attorneys).
Mr. James A. O'Neill for defendant The Borough of Avalon.
HORN, J.S.C.
Plaintiffs, consisting of taxpayers, voters and The Avalon Home and Land Owners Association, all of the Borough of Avalon, primarily seek by this action to enjoin the borough and its officials from enforcing the provisions of ordinance No. 395. Following answers made by defendants, plaintiffs moved for a summary judgment, relying on defendants' admissions and the pleadings on file.
*486 At the oral argument of the motion, counsel agreed that since the facts, as disclosed by said admissions and pleadings, were not controverted, the matter should be considered as if all parties moved for summary judgment and that a determination should be made on the basis of the pleadings, admissions and affidavits.
The facts leading to these proceedings disclose that the borough is governed by a three-man commission form of government as provided in N.J.S.A. 40:70-1 et seq., the Walsh Act or "Commission Form of Government Law." Grogan v. DeSapio, 11 N.J. 308 (1953). For a number of years the borough had supplied its inhabitants with water drawn from wells through a system of underground conduits, charging therefor flat rates based on the size of the lateral service conductors to each property. On August 2, 1967 the New Jersey State Department of Health made a routine inspection which resulted in a report of certain defects and inadequacies in the public water system. The report, recommending action to remove the substandard conditions, suggested that the borough obtain an additional source of water. Engineering studies were made. Application was made to the Division of Water Policy and Supply (N.J.S.A. 58:4A-14) to permit it to drill a new well and to divert water from the subterranean source. Authorizations were granted upon certain specified conditions, including a requirement that all services to consumers should be metered and bills submitted to them quarterly at metered rates.
In March 1968 the municipality adopted ordinance No. 388, entitled "Bond Ordinance Providing for Improvement of the Water Supply and Distribution System * * *." It described the improvements to be made in the water supply and distribution system, provided for issuance of $468,000 bonds to finance the improvement, and appropriated this sum therefor. The ordinance also contained provisions calculated to comply with the Local Bond Law, N.J.S. 40A:2-1 et seq. In November 1968, by ordinance No. 388-1, the authorized *487 amount of bonds to be issued and the appropriation were increased to $584,000.
On December 18, 1968 the borough adopted ordinance No. 395, the operative effect of which plaintiffs seek to enjoin. It regulates the use of water, fixes metered rates and sets out rules and regulations with respect to the supply and distribution.
On December 27, 1968 a petition was filed with the borough, signed by more than 15% in number of the electors of the entire vote cast at the last general municipal election. The petition requested that defendants suspend operation of the ordinance. When, on January 6, 1969, the governing body rejected the petition by a formal resolution, this action was instituted.
Plaintiffs contend that the provisions of R.S. 40:74-5, by virtue of the terms of which the petition was filed, mandate the suspension of the operation of the ordinance, so that the borough commissioners are obliged either to repeal the ordinance or submit it to the voters by means of a referendum. Defendants are of the view that the filing of the petition is without effect upon the ordinance.
Since plaintiffs never sought a referendum with respect to ordinances 388 or 388-1, it is obvious (and they admit) that their real objective is to secure a decrease in the metered water rates prescribed by ordinance No. 395. They agree that the improvement in the water system is needed for reasons of public health, safety and welfare. Thus, in effect they seek to have the electorate determine the ultimate rates to be charged by securing or requiring referenda until the governing body reduces the rates to meet their approval.
N.J.S.A. 40:74-5, on which plaintiffs rely, provides:
"If within ten days after the final passage of an ordinance, except ordinances authorizing an improvement or the incurring of an indebtedness, other than for current expenses, where other requirements are made by law, a petition signed by electors of the municipality equal in number to at least fifteen per cent of the entire vote cast at the last preceding general municipal election protesting against the passage of such ordinance, be presented to the board, it *488 shall thereupon be suspended from going into operation and the board of commissioners shall reconsider the ordinance. If the ordinance is not entirely repealed, the board shall submit it, in the manner provided in paragraph `b' of section 40:74-14 and sections 40:74-15 to 40:74-18 of this title, to the vote of the electors of the municipality, either at the general election or at a special municipal election to be called for that purpose, and such ordinance shall not become operative unless a majority of the qualified electors voting on the ordinance shall vote in favor thereof."
N.J.S.A. 40:74-8 provides:
"No petition or submission to the vote of the electors shall be necessary to authorize the undertaking or completion of any work, the purchase or construction of any public utility or improvement, which any municipality may be authorized by law to undertake, purchase or construct, or to authorize the borrowing of money and the issuance of bonds or other obligations for any purpose for which any municipality may be authorized by law to issue bonds or other obligations."
In 1917 the Home Rule Act was adopted. L. 1917, c. 152, p. 319, as amended, N.J.S.A. 40:42-1 et seq. That part of the Home Rule Act granting powers to municipalities with respect to municipally-owned water systems, N.J.S.A. 40:62-54, provides:
"No resolution or ordinance of any board or body of any municipality not previously supplying its inhabitants with water from waterworks owned by it, providing for the acquisition by such municipality of any existing waterworks or supply as provided in paragraph `d' of section 40:62-49 of this Title shall be operative or effective until after the expiration of thirty days from its adoption or passage and after publication thereof in a newspaper circulating in the municipality. If before the expiration of such period there shall be filed with the municipal clerk a petition requesting that a referendum vote be taken on the proposed action, signed by not less than ten per centum of the legal voters who voted at the next preceding general election in the municipality, then the resolution or ordinance shall remain inoperative until the result of the referendum be determined.
Except where inconsistent herewith, the procedure in sections 40:49-9 to 40:49-11 of this Title shall apply to this section."
Defendants first urge that N.J.S.A. 40:74-5 is inapplicable and does not require a referendum because of the *489 provisions of N.J.S.A. 40:74-8, and that the Legislature intended that the provisions of the Home Rule Act governing municipally-owned public utilities, N.J.S.A. 40:62-1 et seq., should be exclusive and controlling. Second, that even if N.J.S.A. 40:62-1 et seq. was not intended to be exclusively controlling in the field, the statutory purposes as evidenced by these laws require a holding that the objectives of ordinance No. 395 are an integral part of the overall improvement to be effected by ordinance 388 and 388-1 so that since there was no remonstrating petition filed as to these initial ordinances, none can be effective as against No. 395.
N.J.S.A. 40:49-9, also a part of the Home Rule Act, in part provides:
"Any ordinance authorizing any improvement shall become operative ten days after the publication thereof after its final passage, unless within said ten days a protest against making the improvement shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, * * * in which case the ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition. * * *"
It has already been decided that that portion of N.J.S.A. 40:74-5 relating to the operation, suspension and referendum to the voters of ordinances authorizing any improvement, was suspended or repealed by N.J.S.A. 40:49-9. Weiner v. Board of Com'rs of City of Perth Amboy, 106 N.J.L. 276 (Sup. Ct. 1930); Perry v. Borough of Deal, 103 N.J.L. 310 (Sup. Ct. 1926), affirmed 104 N.J.L. 182 (E. & A. 1927); Whetling v. Board of Com'rs of City of Orange, 94 N.J.L. 36 (Sup. Ct. 1919).
I agree with the argument of defendants that N.J.S.A. 40:62-1 et seq. was intended to deal exclusively with municipally-owned utilities. The Legislature appears to have carved out a complete statutory scheme with respect to these. This chapter deals with all authorized municipally-owned *490 utilities, including abbatoirs (N.J.S.A. 40:62-7), airports (N.J.S.A. 40:62-8), coal, wood and ice depots (N.J.S.A. 40:62-10), power, heat and light plants (N.J.S.A. 40:62-12), radio stations (N.J.S.A. 40:62-26), transportation (N.J.S.A. 40:62-35) and water supply (N.J.S.A. 40: 62-47). A referendum may be requested as to certain of these, i.e., power, heat and light (N.J.S.A. 40:62-15), transportation (N.J.S.A. 40:62-36) and water supply, if not previously furnished by the municipality (N.J.S.A. 40:62-54). Certainly as to those utilities where referenda may be required, the scheme of the Home Rule Act appears to be that the built-in referenda provisions in N.J.S.A. 40:62 are exclusive and that those provided in other statutes would not be applicable.
The entire scheme of municipally created, owned and operated water systems is incorporated in N.J.S.A. 40: 62-47 to 40:62-105. Among these are provisions to enlarge the system or components of it (N.J.S.A. 40:62-59) and to adopt ordinances and resolutions necessary and proper for the protection and operation of the system. These include the installation and protection of water meters and also for fixing and collecting the water rents or prices for water. N.J.S.A. 40:62-77.
As already observed, the provisions of N.J.S.A. 40:74-5, with respect to improvement referenda, had been superseded by N.J.S.A. 40:49-9. Additionally, N.J.S.A. 40:74-8 deleted the right to a referendum under section 5 with respect to the undertaking or completion of any work, or the purchase or construction of any public utility or improvement.
N.J.S.A. 40:62-54 covers the same subject as N.J.S.A. 40:49-9 insofar as municipal water utility improvements are concerned, except that it excludes an involuntary referendum if the municipality previously supplied its inhabitants with water from waterworks owned by it. This is the situation here. The two statutory provisions conflict if it is interpreted that N.J.S.A. 40:49-9 requires a *491 referendum and N.J.S.A. 40:62-54 does not. This conflict points up the view that N.J.S.A. 40:62-54 was intended to be exclusively controlling. It will also be observed that the last paragraph of N.J.S.A. 40:62-54 provides that except when inconsistent with this section, the procedure in sections 40:49-9 to 40:49-11 shall apply.
Plaintiffs argue, however, that even if the two statutes cover the same subject, it was not intended that N.J.S.A. 40:62-54 should supersede N.J.S.A. 40:49-9 because under N.J.S.A. 40:49-9 a referendum may be initiated by taxpayers representing 10% in amount of the assessed valuation, but under N.J.S.A. 40:62-54 the petition is required to be signed by not less than 10% of the legal voters who voted at the next preceding general election.
I do not believe that this contention is valid. It seems hardly likely that the Legislature intended to require a referendum under N.J.S.A. 40:49-9 and not under N.J.S.A. 40:62-54, without some additional language in N.J.S.A. 40:62-54 or some other section of that chapter to clarify the apparent conflict. Additionally, in cases where municipalities have not previously supplied its inhabitants with water, it seems unlikely that it was intended that referenda could be initiated under both or either of the statutes N.J.S.A. 40:49-9 and 40:62-54. Weiner v. Perth Amboy, Perry v. Deal and Wethling v. Orange, all supra, make it clear that the fact that N.J.S.A. 40:74-5 required the remonstrating petition to be signed by electors equal in number to at least 15% of the entire vote cast at the last preceding general municipal election, and that N.J.S.A. 40:49-9 required such petition to be signed by taxpayers representing 10% in amount of the assessed valuation of such municipality, was no obstacle to holding that the latter statute partially superseded the former.
I believe that the provisions of ordinance No. 395 are part and parcel of the general improvement theretofore ordained. The rules and regulations which were promulgated by the ordinance under attack, as well as the metered rates fixed *492 for service to consumers, are provisions implementing the basic improvement.
This is a pragmatic approach as well. In view of the fact that the increased supply of water may not be utilized unless meaningful rates are required to be paid by consumers, it seems hardly likely that the Legislature intended the possible frustration of the sound purposes of the improvement ordinance by permitting the effective transfer of the rate-fixing power from the governing body to the electorate, especially in a situation where the electorate had no right to a referendum initially.
Accordingly, plaintiffs are not entitled to an injunction since the petition filed with the borough was ineffective to suspend the operation of Ordinance No. 395. Of course, if the rates conflict with constitutional prohibitions, relief may be had in an appropriate proceeding. Oradell Village v. Wayne Tp., 98 N.J. Super. 8 (Ch. Div. 1967), affirmed per curiam 101 N.J. Super. 403 (App. Div. 1968), affirmed 53 N.J. 496 (1969); P.J. Ritter Co. v. Mayor of City of Bridgeton, 135 N.J.L. 22 (Sup. Ct. 1946), affirmed 137 N.J.L. 279 (E. & A. 1948); Woodruff v. Mayor, etc., of City of East Orange, 71 N.J. Eq. 419 (Ch. 1906).
Judgment will be entered dismissing the complaint. No costs.