154 N.J. Super. 482 (1977)
381 A.2d 1217
IN RE CERTAIN PETITIONS FOR A BINDING REFERENDUM, FILED PURSUANT TO N.J.S.A. 40:74-1 ET SEQ.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1977.
Decided November 21, 1977.
*483 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. John H. Anlian argued the cause for defendant-appellant (Mr. Patrick J. Tansey, attorney).
Mr. Martin T. Durkin argued the cause for plaintiff-respondent (Messrs. Durkin & Foerst, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This is a declaratory judgment action brought by plaintiff Village of Ridgefield Park to test the validity of an initiative petition seeking the enactment of amendments to the comprehensive traffic ordinance of the municipality pursuant to N.J.S.A. 40:74-9 (applicable to Walsh Act (or commission form) of government municipalities). The trial court rendered judgment, holding initiative proceedings legally unavailable for the stated purpose. In re Petitions of Ridgefield Park, 149 N.J. Super. 530 (Law Div. 1977). The opinion may be consulted for details as to the background of the litigation.
The trial judge's discussion of the facts should be amplified to reflect the background against which the controversy concerning Ridgefield Park's traffic problems must be understood. The village is a densely populated municipality, having a population of about 15,000 within an area of less *484 than two square miles. It is traversed by four major highways, including the New Jersey Turnpike, which has its northern terminus therein. The interchanges of Rt. I-95, Rt. 46 and the Turnpike are situated in the central part of town. There are several entrances to and exits from these heavily trafficked highways in the municipality. Exhibits in evidence show a number of narrow residential streets, some of curved and irregular conformation.
The municipality began to study revision of its long-standing traffic and parking ordinances in 1969. A comprehensive new ordinance was submitted in 1975 and, after approval by the bureau of traffic and engineering in the State Department of Transportation, was adopted in December 1975. The ordinance proscribes overnight parking on certain main business streets, sets out an alternate side of the street parking schedule, designates certain public thoroughfares as one-way streets, and provides special seasonal parking regulations to accommodate snow removal. There was widespread objection to the ordinance by residents inconvenienced by the restrictions on parking, and some modifications of the restrictions were adopted, but not sufficient to prevent the filing of a petition for an initiative referendum on substantial amendments of the regulations. The amendments sought by petitioners called for (a) repeal of the alternate side of street parking restrictions (adopted for purposes of street cleaning); (b) changing the streets designated as one-way streets: (c) changing the regulations as to parking at times of snowfall, and (d) reducing penalties for violations.
Although statutory provisions for initiative and referendum as to municipal ordinances are generally liberally construed to effect the salutary objective of popular participation in local government, Cuprowski v. Jersey City. 101 N.J. Super. 15, 27 (Law Div.), aff'd o.b. 103 N.J. Super. 217 (App. Div.), certif. den. 53 N.J. 80 (1968), yet our courts have been open to persuasion that in respect of certain kinds of subject matter it was the supervening legislative intent that resort to initiative or referendum was not *485 to be available notwithstanding the breadth of the permissive enabling legislation. While the initiative statute here invoked, N.J.S.A. 40:74-9, states that "[a]ny proposed ordinance [with a single stated exception not here involved] may be submitted to the board of commissioners by petition of the electors * * *," it has been authoritatively observed, in reference to similar language in the Faulkner Act, that "`any ordinance' does not mean `all ordinances.'" Smith v. Livingston Tp., 106 N.J. Super. 444, 457 (Ch. Div.), aff'd o.b. 54 N.J. 525 (1969). In effect, "any ordinance" means any ordinance except such as to which a contrary legislative purpose may be discerned, whether express or implied.
Thus, in Cuprowski, supra, it was held that a referendum was not available on the annual municipal budget. The ratio decidendi was that it was never intended that the electorate should review administrative or executive decisions of the governing body as distinguished from legislative ones, 101 N.J. Super. at 23, and budget making was regarded as an administrative function, Id. at 25.
Smith v. Livingston Tp., supra, exemplifies the situation where the intent of the Legislature against availability of review by plebiscite is more directly drawn from the positive contents of cognate legislation. Amendment of a zoning ordinance was there held not available by initiative under the Faulkner Act. The same holding was rendered as to use of the referendum upon an adopted zoning amendment in Sparta Tp. v. Spillane, 125 N.J. Super. 519 (App. Div. 1973), certif. den. 64 N.J. 493 (1974). See also, Snow v Bell, 105 N.J. Super. 484 (Ch. Div. 1969). Considerations ab inconvenienti abound in the opinions in the prohibitory cases cited. See, e.g., Cuprowski, 101 N.J. Super. at 25; Smith, 106 N.J. Super. at 454-455.
In the instant case, the trial judge rejected the initiative on the ground that traffic regulations are administrative rather than legislative in character. We are not at all confident that the characterization is correct as a matter of principle. The ordinance prescribes a permanent rule of *486 conduct for the generality of the population in manner similar to police power ordinances as a class. In that sense it has a legislative character. See 5 McQuillin, Municipal Corporations (3 ed. 1969), § 16.55 at 213. But the matter of categorization need not be pursued, as we are satisfied that the decision of the trial judge should be sustained on the more enveloping concept of presumed legislative intent.
There is convincing evidence that the Legislature regards the matter of traffic regulation as one of combined and cooperative state and local action having regional as well as purely local import. Prior to 1969 no municipal ordinance regulating traffic had any effect unless approved by the Director of the Division of Motor Vehicles. N.J.S.A. 39:4-8. The determination of that officer was required to be made after investigation and a finding that the regulation was "in the interest of safety and the expedition of traffic on the public highways." Ibid. By the enactment of L. 1969, c. 65, the powers of the Motor Vehicle Director in review of local traffic regulations were transferred to the State Commissioner of Transportation. Section 1 of that statute made the following legislative findings:
The Legislature hereby finds and declares that the administration, development and enforcement of laws and regulations relating to traffic, and the regulation and control of the character, type, location, placing and operation of all official traffic control devices on the streets, highways and public places in New Jersey require coordination and co-operation between the State and individual local authorities; that although there should be a general, State-wide policy concerning the movement of traffic and traffic control devices, that policy should be sufficiently flexible to take into account such factors as aesthetics, practicability and community interests, and should permit a consideration of particular circumstances in individual municipalities; and that it is the purpose of this act to provide for the efficient formulation of such a flexible State-wide policy concerning the movement of traffic and traffic control devices in the public interest. [Emphasis supplied]
The foregoing legislative action and declaration indicates that in the area of traffic control and regulation the localities and the State Department of Transportation are constituted *487 a collaborative team to subserve not only purely local interests but those of contiguous areas as well. It is common knowledge that many of our municipalities form common transportion and roadway networks irrespective of municipal boundary lines. Consequently, traffic regulations need to be based on considerations common to the regions as well as those peculiar to localities, and to be comprehensive in their scheme and plan. State participation assures these broader functions.
Thus viewed, it is not within reasonable contemplation that the Legislature would intend the possibility of fragmentization or disruption of such comprehensive traffic planning by isolated and uncoordinated actions of the local electorates via initiative or referendum.
In these regards, the factual observations of the trial judge have pertinence:
Traffic ordinances in general are not of a permanent character. Indeed, ordinances of this type lend themselves to and are the subject of frequent change, whether that change be necessitated by the growth of the community and region or effected by the desire of the local governing body to implement what it considers to be a more efficient and effective ordinance.
[In re Petitions of Ridgefield Park, supra, 149 N.J. Super. at 533.]
For the stated reasons we conclude that traffic ordinances are not subject to the petition procedure authorized by N.J.S.A. 40:74-9.
Judgment affirmed.