181 N.J. Super. 412 (1981)
437 A.2d 918
ATLANTIC CITY HOUSING ACTION COALITION, JOHN KELLEY, MARY WILSON, HERBERT WILSON AND CORA BOGGS, PLAINTIFFS,
v.
ADELAIDE DEANE, CLERK OF THE CITY OF ATLANTIC CITY, DEFENDANT.
Superior Court of New Jersey, Law Division Atlantic County.
Decided August 5, 1981.
*414 Michael Carroll for plaintiffs (Cape-Atlantic Legal Services, attorney).
Matthew H. Powals, City Solicitor of Atlantic City, for defendant.
GRUCCIO, A.J.S.C.
This court is presented with the novel issue of whether the right to propose an ordinance by voter initiative pursuant to N.J.S.A. 40:74-9 et seq. can properly be impeded by a decision of a ministerial officer such as a city clerk, even if supported by the advice of a city solicitor, that the subject of the ordinance is not appropriate for submission to the voters. Given compliance *415 with the formal requirements for submitting an ordinance, the city clerk must either place the ordinance on the ballot or seek forthwith a declaration from the courts as to the ordinance's validity. However, this court does not direct the city clerk to place the subject ordinance on the ballot based on a compelling showing that a proper case has been established herein for interfering with the initiative power. Although the Walsh Act, which gives voters the power of initiative and referendum as to ordinances, was adopted to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters, the initiative procedure provided for in the Walsh Act does not apply to initiate the redevelopment process in a municipality.
The Atlantic City Council had, by ordinance, declared a need for the functioning of the Atlantic City Housing Authority in the late 1930s and of the Urban Redevelopment Agency in the 1970s pursuant to N.J.S.A. 40:55C-6. To date the council has not adopted a comprehensive urban redevelopment plan. As a condition precedent to proceeding with said redevelopment plan, N.J.S.A. 40:55C-17 provides in part that the governing body of the municipality must first, by ordinance, approve a redevelopment plan. Due to the inaction of the governing body as to the redevelopment process, plaintiffs wish to accomplish by an ordinance proposed by voter initiative what the municipality can do by ordinance, namely, to begin the redevelopment process.
Accordingly, plaintiffs submitted to the city clerk a "People's Ordinance" pursuant to N.J.S.A. 40:74-9, whose content is set out in the Appendix to this opinion.
Accompanying this proposed ordinance was a voters' petition signed by electors containing a request that the ordinance be submitted to a vote of the people if not passed by the board of commissioners. Plaintiffs' counsel received from the city clerk's office an unsigned, unsealed communication indicating, among other things, inter alia that plaintiffs' petition did not contain the number of voter signatures required by N.J.S.A. 40:74-14. *416 The communication validated 1092 of the signatures submitted and rejected 864, with the total number needed listed as 1491 by the city clerk.
Upon receipt of the initial petition the city clerk requested an opinion from the city solicitor as to whether the proposed ordinance was in fact proper for submission to the initiative process. On the same day as plaintiffs' attorney was informed that there were insufficient signatures validated on the initial petition, the city solicitor advised the city clerk that the proposed ordinance was in fact outside the scope of the initiative provisions of the Walsh Act. The city solicitor recommended that the proposed ordinance should not be processed further.
Pursuant to N.J.S.A. 40:74-13 plaintiffs submitted additional voter signatures to the city clerk in the form of an amended petition. Since this submission the city clerk has not certified the initial petition or amended petition as being either sufficient or insufficient.
Plaintiffs Atlantic City Housing Action Coalition, John Kelley, Mary Wilson, Herbert Wilson and Cora Boggs have filed a complaint in lieu of prerogative writs seeking a writ of mandamus pursuant to N.J.S.A. 40:74-9 et seq. directing Adelaide Deane, Clerk of the City of Atlantic City, to process the above-mentioned voter petitions. Specifically, plaintiffs demand that the city clerk examine the petitions to ascertain if they contain the requisite number of qualified voter signatures or, if insufficient, that they be returned to plaintiffs.
It must be noted at the outset that the city clerk exceeded her authority in undertaking to determine whether the proposed ordinance was within the power of the electorate to adopt. Although some jurisdictions have held to the contrary for various reasons, see Hughes v. Bryan, 425 P.2d 952, 954 (Okl.Sup.Ct. 1967) and Morehead v. Dyer, 518 P.2d 1105, 1107 (Okl.Sup.Ct. 1974), this court adopts the reasoning articulated by Chief Justice Traynor in Farley v. Healey, 67 Cal.2d 325, 62 Cal. Rptr. 26, 431 P.2d 650 (Sup.Ct. 1967), as more compelling.

*417 [U]nder section 180 of the Charter of the City and County of San Francisco, his [registrar of voters] duty is limited to the ministerial function of ascertaining whether the procedural requirements for submitting an initiative measure have been met. It is not his function to determine whether a proposed initiative will be valid if enacted or whether a proposed declaration of policy is one to which the initiative may apply. These questions may involve difficult legal issues that only a court can determine. The right to propose initiative measures cannot properly be impeded by a decision of a ministerial officer, even if supported by the advice of the city attorney, that the subject is not appropriate for submission to the voters. Given compliance with the formal requirements for submitting an initiative, the registrar must place it on the ballot unless he is directed to do otherwise by a court on a compelling showing that a proper case has been established for interfering with the initiative power. [431 P.2d at 651-652; citations omitted; emphasis supplied]
Although the duty of the registrar of voters in Farley v. Healey was directly referable to a specific section of a municipal charter and the initiative measure under question in that case urged an immediate cease fire and American withdrawal from Vietnam, these factual dissimilarities to the instant case are not sufficiently distinctive to preclude that analysis from applying to the within factual complex. Therefore, it should ordinarily follow that a peremptory writ of mandamus issue directing the city clerk to determine the sufficiency of the signatures to the petition and, if determined to be sufficient, to place the proposed initiative on the ballot for a municipal election. However, defendant seeks to avoid this pitfall by suggesting that initiative measures cannot be submitted to the electorate unless they concern municipal affairs on which the board of commissioners could enact binding legislation. In discussing and clarifying the extent of the powers of the governing body of a municipality in the redevelopment process, defendant emphasizes frequently and at length the conditions precedent to proceeding with a redevelopment plan enunciated in N.J.S.A. 40:55C-17.
Plaintiffs counter by urging that the right to present "any ordinance" under the initiative power is preserved to the people by virtue of N.J.S.A. 40:74-9 et seq.; that this right is unlimited, as evidenced by the language of the statute, with the exception of a proposed ordinance fixing the salaries, wages or compensation of municipal employees; that N.J.S.A. 40:74-9, *418 upon which plaintiffs predicate their cause of action, has not been expressly repealed; that an implied repeal is not to be presumed in the absence of irreconcilable inconsistencies and repugnancies between N.J.S.A. 40:74-9 and N.J.S.A. 40:55C-1 et seq.; that in the absence of an express limitation upon the right of the electors to submit a petition calling for passage of, or an initiative on, an ordinance dealing with a lawful subject, none may be implied.
Concededly, the basic rule is that statutory or constitutional provisions dealing with the power of initiative and referendum are to be liberally construed in their favor in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters. Sparta Tp. v. Spillane, 125 N.J. Super. 519, 523 (App.Div. 1973); Margate Tavern Owners Ass'n v. Brown, 144 N.J. Super. 435, 441 (App.Div. 1976), cert. den. 72 N.J. 455 (1976). This favorable view, however, is subject to and must be construed with governing statutory and constitutional provisions. 5 McQuillin, Municipal Corporations (3 ed. 1969), § 16.50. The right to referendum and initiative in municipal affairs is strictly a statutory and not a constitutional right. Smith v. Livingston Tp., 106 N.J. Super. 444, 453 (Ch.Div. 1969), aff'd o.b. 54 N.J. 525 (1969); Lawrence v. Schrof, 162 N.J. Super. 375, 380 (Law Div. 1978).
While under Art. I, par. 2, N.J.Const. (1947) all political power is inherent in the people, it does not necessarily follow that the voters may propose any ordinance and adopt the same at the polls through the initiative process. Smith v. Livingston Tp., supra, 106 N.J. Super. at 452. Under N.J.S.A. 40:74-9, "any proposed ordinance" does not mean "all ordinances," but means any ordinance except such as to which a contrary legislative purpose may be discerned, whether express or implied. In re Certain Petitions for a Binding Referendum, 154 N.J. Super. 482, 485 (App.Div. 1977).
The redevelopment statutes found at N.J.S.A. 40:55C-1 et seq. are specific and detail the manner in which the redevelopment *419 process must proceed. N.J.S.A. 40:55C-17 specifically prescribes certain conditions precedent which must occur prior to proceeding with a redevelopment plan. Initially a municipality must determine that a particular area to which a redevelopment plan refers is blighted pursuant to the provisions of N.J.S.A. 40:55-21.1. Before proceeding with a redevelopment plan, the governing body of a municipality must seek the recommendation of its planning board as to land use appropriateness, population density, traffic and public transportation, utilities, recreational and community facilities, compliance with land use and building regulations, and relocation plan adequacy. Then a municipality must approve the redevelopment plan by ordinance.
The initiative and referendum provisions in the Walsh Act, N.J.S.A. 40:74-9 et seq., adopted in 1911, make no specific reference to the redevelopment process, N.J.S.A. 40:55C-1 et seq., adopted in 1949. Hence, it may be urged that the housing and redevelopment statutes dealing with the subject matter in specific detail should be deemed an exception to the general language of N.J.S.A. 40:74-9. Smith v. Livingston Tp., supra, is especially informative in this regard.
[W]hile there is a rule that as between two conflicting statutes the later governs, Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 223 (1960), there is also the rule that where there is any conflict between a general and specific statute covering a subject more minutely and definitely, the latter will prevail over the former and will be considered an exception to the general statute. Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 165 (1949); State, by State Highway Com'r v. Dilley, 48 N.J. 383, 387 (1967). [106 N.J. Super. at 451-452]
Therefore this court is constrained to hold that the redevelopment process is not subject to ordinance through voter initiative.
Thus viewed, it is not within reasonable contemplation that the Legislature would intend the possibility of fragmentation or disruption of such a comprehensive redevelopment process as provided for in N.J.S.A. 40:55C-1 et seq. by isolated and uncoordinated actions of the local electorate via the initiative process. In these regards this court is guided by the more enveloping concept of presumed legislative intent as articulated in Levin v. Bridgewater Tp. Comm., 57 N.J. 506 (1971), app. dism. 404 U.S. 803, 92 S.Ct. 58, 30 L.Ed.2d 35 (1971).

*420 It may be noted from the above that the legislative purpose in enacting the related 1949 statutes was not solely to provide for slum clearance. It was to authorize the public agencies to function for slum clearance and urban, suburban and rural redevelopment, to acquire land for that purpose and to make it available for redevelopment by private enterprise or by public agencies in accordance with approved redevelopment plans. Another purpose was to authorize cooperation with and the obtaining of funds from federal agencies. Obviously these enactments are in pari materia and warrant liberal judicial construction in order to effectuate the beneficent legislative design. See, e.g., N.J.S.A. 40:55C-29. An important aspect of that policy, as indicated by the common inclusion of subsection (e) in all three statutes, as well as the legislative determinations quoted above, is that the lawmakers intended that land areas should be deemed blighted and made available for redevelopment when from the community standpoint "proper development" [emphasis in original] thereof was being prevented or impeded by title problems, diverse ownership, obsolete and impractical street and lot layouts and the like, any of which have resulted in a stagnant and unproductive condition of the land. [at 511-512] [emphasis added.]
Louis J. Sirico, Jr., in "The Constitutionality of the Initiative and Referendum," 65 Iowa L.Rev. 637, 654-656 (1980), elucidates how a plebiscite must not pretend to the role of an alternate administrative agency.
[A]lthough agencies do not serve primarily as checks or lawmakers, they do perform a different ancillary function  implementing the directives of the legislature. When the agency acts outside its mandate, it becomes an alternative lawmaking body, disrupts the Constitution's structural arrangement, and invites attack under the delegation doctrine. [Footnote omitted.] The doctrine's dormancy as a judicially enforced constitutional rule [footnote omitted] does not negate its conceptual validity. Rather, the doctrine admits a shaky trust in the legislature to hold its own creature accountable. The administrative system's autonomous proclivities draw frequent fire and trigger demands to tighten the legislative and judicial reins. [Footnote omitted.] The concerns underlying the delegation doctrine thus continue to prompt vigilance. Like the agency, the plebiscite must remain in its respective ancillary role and not pretend to the role of an alternative legislature.
Formal methods for restraining the maverick agency are readily available. These methods include both constitutional restrictions and statutory limitations. Courts and legislatures demand that agencies execute specified procedural duties, articulate their aims and assumptions of fact, build an evidentiary record justifying decisions, consider alternative solutions, and respond to the opposing positions of interested parties. [Footnote omitted.] Plebiscites, however, are exercises in lawmaking that labor under fewer limitations. Even when state constitutional provisions and statutes impose restrictions, courts generally supply generous interpretations in deference to the legislative nature of the process and to its democratic quality. [Footnote omitted.]

*421 The heart of the problem lies with the plebiscite's method of performing its ancillary role. The agency implements legislative mandates and makes no formal pretense to be the legislature's equal. When the agency's conduct constitutes independent lawmaking, judicial and legislative checks become operative. The plebiscite, however, performs its role by serving as a competitive source of lawmaking. The plebiscite's check is extremely potent because it can actually override the representative legislature on specific issues. [Footnote omitted.] In the case of the initiative, a ballot vote can even decree an alternative course of conduct. Thus, a paradox exists: the plebiscite operates by assuming the function of the body that it is designed to check.
Thus, in the area of urban redevelopment the Legislature has authorized the governing bodies of municipalities to establish housing authorities and urban redevelopment agencies to assist them in the performance of functions in this area. N.J.S.A. 40:55C-1 et seq. lays down a very specific and detailed procedure to be followed by the governing bodies of municipalities in executing such functions. Such comprehensive and precise treatment demonstrates the need for housing authorities and urban redevelopment agencies and the special concern of the legislature in this important area of urban redevelopment. The local electorate cannot abrogate the legislative intent in this regard.
Since the relief sought by plaintiffs has been denied on grounds of statutory construction, it is unnecessary to consider defendant's argument that an implied limitation upon the initiative power may be found where the subject matter of the initiative is executive or administrative in nature rather than legislative.

APPENDIX
The Atlantic City Housing Action Coalition, with the support and approval of civil, fraternal, and religious organizations, and that of concerned citizens of the North Inlet Redevelopment Area, which is herein defined, submit this People's Ordinance to the Board of Commissioners of the City of Atlantic City.
The aforenamed community residents request that said Board pass this Ordinance without alteration within twenty days or *422 submit it without alteration to a vote by the people, pursuant to N.J.S.A. 40:74-14.
WHEREAS, by resolution, the Board of Commissioners of the City of Atlantic City determined that the City's Housing Strategy for the period 1980-1990 shall include a commitment to providing decent, safe, and sanitary housing for low, moderate, and middle-income families and individuals; and
WHEREAS, in its Housing Strategy, said Board designated the Melrose Avenue North Area, bounded by Gardner's Basin, Melrose, Parkside, and Maine Avenues, as an area particularly suited for the development of residential units; and
WHEREAS, by resolution, said Board designated Atlantic City Tax Block 97 as a Blighted Area;
NOW, THEREFORE, BE IT RESOLVED by the Board of Commissioners of the City of Atlantic City:
SECTION 1. The Atlantic City Housing Authority and Redevelopment Agency, with the Atlantic City Housing Action Coalition, which is comprised of members of community groups and of other residents of the City, including residents of the North Inlet Redevelopment Area, which is comprised of Atlantic City Tax Blocks 97 and G1 through G12, shall agree on a detailed plan for the redevelopment of that area. Said plan shall include the following components, which have been approved by residents of said area and of the City:
a. The construction of townhouses for conventional sale and for exchange for the homes of property owners living within the North Inlet Redevelopment Area. The detailed design and the number of such structures shall be determined by the Housing Authority and the aforenamed committee.
b. The construction of rental housing designed for occupancy by low-income families with children. The detailed design, the number of units, the percentage of government subsidized units, and the monthly cost to tenants of leasing said units shall be determined by the Housing Authority and the aforenamed committee.
c. The construction of middle and upper-income fair market rental housing. The detailed design, the number of units, and the monthly cost of leasing said units shall be determined by the Housing Authority and the aforenamed committee.

*423 d. The construction of modular housing on city-owned lots throughout the city. The number of units of said housing, the terms on which households will be determined to be eligible to occupy it, shall be determined by the Housing Authority and the aforenamed committee. Eligible households shall include those occupying homes under the Homestead program of the City of Atlantic City at the time of the passage of this Ordinance.
SECTION 2. Herein established are types of minimum consideration to owners of property located within the North Inlet Redevelopment area, and the provision, prior to displacement, of adequate replacement resources to all resident owners and tenants including business establishments. Said consideration shall include the following:
a. The guarantee to anyone who, as of the effective date of this Ordinance, utilizes as his principal and legal residence property located within the North Inlet Redevelopment Area, of the choice of one of the following: a home for a home, free and clear, which replacement resource shall be located within the North Inlet Redevelopment Area; or fair market value; or a sum equivalent to the cost of land acquisition for and construction of a new home in the said area.
b. The guarantee to all non-resident property owners of fair market value, which is to be established no later than ninety (90) days after issuance of a preliminary notice.
c. The guarantee that should evidence be presented by an owner of property in said area that his property has risen in value since the time of the appraisal, the Housing Authority shall effect an update of the appraisal and shall re-establish fair market value. The Housing Authority shall do the same if a material change in the character or condition of the property occurs, which change causes an increase in the fair market value of said property, or if a significant delay occurs following the time of the appraisal, during which delay the fair market value of the property increases.
d. The guarantee to all tenants of the North Inlet Redevelopment Area of the provision of a rental unit in said area. The particulars of said rental housing shall be agreed upon as described in Sections 1 and 2 of this Ordinance. No tenant residing in said area shall be denied any or all relocation assistance to which he is entitled.
SECTION 3. Any resident property owner who chooses the option of a home for a home, shall not be permitted to sell or convey said property within three (3) years of the effective date of this Ordinance.
SECTION 4. Establishment of a priority system for approval of applications for rental housing, including the right of first refusal for rental housing constructed in accordance with the *424 provisions of this Ordinance belonging to tenants of the North Inlet Redevelopment Area, and the subsequent right of refusal for the remainder of said rental housing belonging to tenants of substandard housing in the City of Atlantic City. The degree of severity of conditions in which such tenants must live in order to be made eligible for said rental housing is to be named as a set of types of housing problems which is to be determined by the Atlantic City Housing Authority and Redevelopment Agency and the aforenamed committee.