240 N.J. Super. 346 (1990)
573 A.2d 472
DANIEL TUMPSON, STEPHEN BUSCH, J. RONALD HINE, MONICA HETTERICH, AND PATRICK R. SMITH, ON BEHALF OF THEMSELVES AND 1691 ADDITIONAL SIGNERS OF A REFERENDUM PETITION, PLAINTIFFS-APPELLANTS,
v.
JAMES FARINA, PERSONALLY AND IN HIS CAPACITY AS CITY CLERK OF THE CITY OF HOBOKEN; PATRICK PASCULLI, INDIVIDUALLY AND IN HIS CAPACITY AS MAYOR OF THE CITY OF HOBOKEN, AND CITY OF HOBOKEN, A NEW JERSEY MUNICIPAL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1990.
Decided April 23, 1990.
*347 Before Judges GAULKIN, DREIER and D'ANNUNZIO.
Ira Karasick argued the cause for appellants (Karasick & Parrott, attorneys; John Payne, of counsel).
Anne S. Babineau argued the cause for respondents (Wilentz, Goldman & Spitzer, attorneys; Anne S. Babineau, Viola S. Lordi and Richard J. Byrnes, on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
Plaintiffs brought this prerogative writs action in lieu of mandamus to compel the Hoboken City Clerk to accept for filing a referendum petition calling for the repeal of an ordinance authorizing execution of a municipal development agreement and lease between the City of Hoboken and the Port Authority of New York and New Jersey (the Ordinance). On the parties' cross-motions, a Law Division judge entered judgment declaring that "the redevelopment process undertaken by the Mayor and City Council of the City of Hoboken is not subject to the referendum process" and denying plaintiffs' application for an order compelling the City Clerk to accept and file the petition. Plaintiffs appeal. We reverse.

I.
The Ordinance was adopted to implement a redevelopment project on the City's southern waterfront. Virtually all of the property compromising the project area had been owned by the United States government, leased to the City and subleased to the Port Authority in 1952. The City took title in 1984 and immediately entered into an agreement with the Port Authority contemplating the negotiation and execution of an agreement amending or replacing the 1952 lease to reflect redevelopment of the waterfront piers. Shortly thereafter, the Port Authority was legislatively authorized to enter into agreements to effectuate *348 a waterfront development project on the property. N.J.S.A. 32:1-35.36e,f,k.[1]
In June 1988, the then mayor appointed an ad hoc committee to examine various possibilities for the redevelopment of the waterfront and, by ordinance adopted July 13, 1988, the Mayor and City Council were designated as the local redevelopment agency. N.J.S.A. 40:55C-37. The City retained a variety of architects, planners, financial analysts, traffic analysts and others to assist in the planning. A draft plan was developed and on May 11, 1989, the City and the Port Authority executed an agreement "to establish guidelines for a form of final agreement" to implement the project.
The City Council directed the local Planning Board to prepare a proposed redevelopment plan, conduct a preliminary blight investigation and review and report on the redevelopment plan prepared by the City's planning consultants. N.J.S.A. 40:55-21.10. In November 1989, the Planning Board found the project area blighted and reported its findings as to the proposed redevelopment plan. By ordinance passed on November 17, 1989 the Mayor and City Council adopted the redevelopment plan; on the same day, they also approved the Planning Board's blight report.
Some three weeks later, on December 7, 1989, the City Council adopted the Ordinance at issue here. Its essential provision is to authorize execution of a lease of the City property to the Port Authority. The authorized lease, attached to the Ordinance as an exhibit, is 126 pages long and its attached exhibits and schedules total almost 200 pages. The lease fixes a term of not less than 50 nor more than 99 years. The demised premises include the entire redevelopment area, including dedicated and improved streets, which the City is obligated to vacate. As lessee, the Port Authority undertakes *349 to use the property to effectuate the development plan, to spend at least $41 million in infrastructure construction and to conform to extensive and detailed design guidelines set forth in a lease attachment. Fixed rental payments total $10 million to September 30, 1990, an additional $20 million over at least 5 years contingent on the progress of development and annual percentage rentals based on "gross revenue" as defined in the lease.
On December 27, 1989, plaintiffs submitted their petition protesting the Ordinance, calling for its repeal by the City Council and, if the Council should fail to act, for submission of the Ordinance to the voters for approval or rejection at the polls. N.J.S.A. 40:69A-185 et seq. At the instruction of the City Law Director, the Clerk refused to accept the petitions. This action was filed on December 29, 1989. The Law Division judge denied plaintiffs' request for temporary restraints and on December 30, 1989 the Mayor executed the lease and accepted from the Port Authority the first $7 million fixed rental payment. Final judgment in favor of the City was entered on January 12, 1990.

II.
Plaintiffs presented their protest of the Ordinance pursuant to N.J.S.A. 40:69A-185, which grants the power of referendum to the voters in a Faulkner Act municipality. The statute defines the power of referendum as "the power to approve or reject at the polls any ordinance ... passed by the council."
Despite the generality of that language, the City urges that the legislature did not intend to permit a referendum in circumstances such as those here. The City relies on a number of cases which have found a supervening legislative intent to bar a plebiscite on certain municipal ordinances. See, e.g., D'Ercole v. Mayor and Council, Etc., 198 N.J. Super. 531, 487 A.2d 1266 (App.Div. 1984) (ordinance authorizing lease of firehouse not subject to referendum); In re Certain Petitions for Binding *350 Referendum, 154 N.J. Super. 482, 381 A.2d 1217 (App.Div. 1977) (amendments to traffic ordinance could not be proposed by initiative petition); Cuprowski v. Jersey City, 101 N.J. Super. 15, 242 A.2d 873 (Law Div.), aff'd, 103 N.J. Super. 217, 247 A.2d 28 (App.Div.), certif. den., 53 N.J. 80, 248 A.2d 433 (1968) (budget ordinance not subject to referendum); Atlantic City Housing Action Coalition v. Deane, 181 N.J. Super. 412, 437 A.2d 918 (Law Div. 1981) (ordinance commencing redevelopment plan could not be adopted by initiative). In finding a legislative intent to foreclose referendum or initiative, the courts there considered such matters as whether the ordinance would have regional impact (In re Certain Petitions for Binding Referendum, 154 N.J. Super. at 486, 381 A.2d 1217), whether any municipal action is subject to state approval (id. at 487, 381 A.2d 1217), whether the ordinance is "legislative" or "administrative" in nature (Cuprowski, 101 N.J. Super. at 23, 242 A.2d 873; D'Ercole, 198 N.J. Super. at 545, 487 A.2d 1266), whether action of the electorate would represent uncoordinated tampering with a comprehensive scheme (Atlantic City Housing Action Coalition, 181 N.J. Super. at 419, 437 A.2d 918) and whether action of the electorate would subvert or bypass procedures mandated by the legislature (id. at 421, 437 A.2d 918).
Those cases do not persuade us that a referendum on the Ordinance would contravene any legislative intent. We start with the proposition that the legislative grant of the referendum power "should be liberally construed in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters." Narciso v. Worrick, 176 N.J. Super. 315, 319, 423 A.2d 308 (App.Div. 1980); see also Margate Tavern Owners' Ass'n. v. Brown, 144 N.J. Super. 435, 441, 365 A.2d 1378 (App.Div.), certif. den., 72 N.J. 455, 371 A.2d 60 (1976); D'Ascensio v. Benjamin, 137 N.J. Super. 155, 163, 348 A.2d 219 (Ch.Div. 1975), aff'd, 142 N.J. Super. 52, 359 A.2d 885 (App.Div. 1976), certif. den., 71 N.J. 526, 366 A.2d *351 681 (1976).[2] We also note that the legislature has not explicitly restricted resort to the referendum power with respect to redevelopment plans. Compare N.J.S.A. 40:55D-62 (zoning ordinances not to be submitted to or adopted by initiative or referendum). On its face, the Ordinance is one which fairly invites involvement of the public at large, for it authorizes a project whose location, size and nature will long and significantly affect the style and quality of life in the community. Cf. Concerned Citizens of Wildwood Crest v. Pantalone, 185 N.J. Super. 37, 47, 447 A.2d 200 (App.Div. 1982). The Ordinance does not serve a ministerial function and thus cannot be characterized as merely "administrative." See Menendez v. Union City, 211 N.J. Super. 169, 172, 511 A.2d 676 (App.Div. 1986).[3] Unlike the initiative which was found in Atlantic City Housing Action Coalition to represent piecemeal action subversive of legislatively-established procedures, the referendum here would involve a simple yes or no vote on a comprehensively planned project. The project is a "complex matter" which demanded "careful study" and "thorough investigation," as the City points out, but we find no evidence that the legislature intended to bar referenda for such reasons. Nor can the statutory authorization for the project be read as evidencing any intent to foreclose referendum: N.J.S.A. 32:1-35.36k empowers the City to contract with the Port Authority, but does not relax the procedural requirements for municipal action, which include the possibility of a referendum as authorized by statute.
*352 In short, we are unpersuaded that subjecting the Ordinance to the power of referendum granted by N.J.S.A. 40:69A-185 would violate any implied legislative intent. We accordingly reverse the judgment and remand the matter to the Law Division for the entry of judgment directing the City Clerk to process plaintiffs' petition as provided by law.
NOTES
[1] L. 1983, c. 9, which became effective August 2, 1984 upon passage of parallel legislation in New York.
[2] The continuing legislative commitment to encouraging citizen participation in municipal affairs through the initiative and referendum processes is underscored by the 1982 amendment of N.J.S.A. 40:69A-184 and 185 to reduce the number of required signatures from 25% to 15% in communities of less than 70,000 citizens.
[3] We agree with the comments of Judge Furman in Menendez that the D'Ercole definition of "administrative" ordinances is overbroad and that the D'Ercole result is contrary to legislative policy. Menendez, 211 N.J. Super. at 172, 511 A.2d 676.