575 A.2d 1368

DANIEL TUMPSON, STEPHEN BUSCH, J. RONALD HINE, MONICA HETTERICH AND PATRICK R. SMITH, ON BEHALF OF THEMSELVES AND 1691 ADDITIONAL SIGNERS OF A REFERENDUM PETITION, PLAINTIFFS-RESPONDENTS, v. JAMES FARINA, PERSONALLY AND IN HIS CAPACITY AS CITY CLERK OF THE CITY OF HOBOKEN; PATRICK PASCULLI, INDIVIDUALLY AND IN HIS CAPACITY AS MAYOR OF THE CITY OF HOBOKEN; AND CITY OF HOBOKEN, A NEW JERSEY MUNICIPAL CORPORATION, DEFENDANTS–APPELLANTS.

Argued June 26, 1990—Decided July 2, 1990.

*Anne S. Babineau* argued the cause for appellants (*Wilentz, Goldman & Spitzer,* attorneys; *Anne S. Babineau, Viola S. Lordi,* and *Richard J. Byrnes,* on the briefs).

*Ira Karasick* argued the cause for respondents (*Karasick & Parrott,* attorneys; *Ira Karasick* and *John Payne,* on the briefs).

PER CURIAM.

We granted certification, —— *N.J.* —— (1990), to consider the validity of a referendum question proposed to the voters of the City of Hoboken, calling for the repeal of a December 7, 1989, ordinance authorizing execution of a municipal development agreement and lease between the City of Hoboken and the Port Authority of New York and New Jersey. Plaintiffs sought repeal of the ordinance pursuant to *N.J.S.A.* 40:69A–185, which grants the power of referendum to the voters in a Faulkner Act municipality. *N.J.S.A.* 40:69A–1 to –210. The statute defines the voters' power of referendum as the power "to approve or reject at the polls any ordinance * * * passed by the council * * *." The Appellate Division reversed a Law Division judgment and upheld the submission of the question to the city's voters. 240 *N.J.Super.* 346, 573 *A.*2d 472 (1990).

Legislation enables the Port Authority to participate in the Hoboken redevelopment project with the express approval of the City of Hoboken. *N.J.S.A.* 32:1–35.36c to –35.36n (Waterfront Development Legislation). By incorporating the compact of 1921, which created the Port Authority, *see N.J.S.A.* 32:1–35.-36m, the Legislature conditioned such participation solely on the granting of municipal approval in the form of a resolution of consent. *N.J.S.A.* 32:1–23. Notwithstanding the incorporated provisions of *N.J.S.A.* 32:1–23, the municipality proceeded by

the ordinance method, thereby insuring broader and fuller public participation in the process of giving consent to the Port Authority's role.

Although Hoboken asserts that authorization of municipal approval by "resolution" reflects the Legislature's intention that the approval be insulated from the referendum process (*N.J.S.A.* 40:69A–185 applies only to "ordinances," not "resolutions"), we are unable to conclude that the Legislature considered or addressed the referendum issue in the Waterfront Development Legislation. In addition, although the city had on May 3, 1989, adopted a resolution agreeing in principle to enter a development agreement with the Port Authority, neither the Port Authority nor the State of New Jersey, through the Attorney General, has asserted that the provision for a referendum on this ordinance will be an unwarranted infringement on the bi-state agency's role. *See Eastern Paralyzed Veterans, Inc. v. City of Camden*, 111 *N.J.* 389, 545 *A.*2d 127 (1988) (no state or subdivision of a state may impose greater requirements on a bi-state agency than authorized by agency's enabling legislation).

Still, "any ordinance" in the Faulkner Act's provisions for referendum does not mean "all ordinances." *Maese v. Snowden*, 148 *N.J.Super.* 7, 12, 371 *A.*2d 802 (App.Div.1977). The referendum statute has been construed to extend to "any ordinance except such as to which a contrary legislative purpose may be discerned, whether express or implied." *In re Certain Petitions for a Binding Referendum*, 154 *N.J.Super.* 482, 485, 381 *A.*2d 1217 (App.Div.1977).

Although the effectuation of a redevelopment plan might best be regarded as an exclusively councilmanic function, not intended to be subject to referendum review, *see Atlantic City Housing Action Coalition v. Deane*, 181 *N.J.Super.* 412, 437 *A.*2d 918 (Law Div.1981) (when Legislature has established comprehensive and detailed requirements for redevelopment procedure, subject not appropriate for referendum), and al-

though land-use ordinances are not subject to referendum, *Township of Sparta v. Spillane*, 125 *N.J.Super.* 519, 312 *A.*2d 154 (App.Div.1973), *certif. denied*, 64 *N.J.* 493, 317 *A.*2d 706 (1974), there are features of this case that militate in favor of the validity of the referendum.

The ordinance approving the agreement contains a mix of factors. It contains at once the municipal consent required by the Waterfront Development Legislation; it contains specific details of construction; but, more importantly, it contains the outline of a broad legislative concept described as "a public alliance" between the City and the Port Authority. The project contemplated is of obvious import to the community. The project will require major undertakings by the city, including the expansion and improvement of sewer facilities. We believe that it would be an unduly-rigid interpretation of the Faulkner Act to say that because the subject ordinance contains land-use decisions or other redevelopment features that are administrative or executive in nature, that fact should necessarily insulate the broad legislative question from the referendum process. This ordinance will forever change the nature of the community. Its adoption is more than a merely administrative function of government.

Given those circumstances, coupled with the fact that the municipality itself has elected to take action by ordinance, the ordinance may properly be amenable to the referendum process. The subject is reasonably susceptible to a yes-no answer. The governing body may well have concluded that the broader the public participation engendered by the ordinance, the more certain will be the long-term support for the project. At oral argument we were informed that the governing body is conducting informational sessions to brief the public fully about the merits of the proposal.

Today's ruling does not in any sense mean that in other circumstances effectuation of a redevelopment project or its particulars or specifics should become the subject of a refer-

endum question in Faulkner Act communities, nor that all features of this project need be subject to the referendum process.

In *Cuprowski v. City of Jersey City*, 101 *N.J.Super.* 15, 242 *A.*2d 873 (Law Div.), *aff'd o.b.*, 103 *N.J.Super.* 217, 247 *A.*2d 28 (App.Div.), *certif. denied*, 53 *N.J.* 80, 248 *A.*2d 433 (1968), the court expressed, as well as it can be said, the judicial dilemma:

In many situations it is difficult to determine how far the limitations [on initiative and referendum] should go. The courts must draw the line in these situations and in doing so must balance two interests—the protection of city government from harassment as against the benefits of direct legislation by the people. [101 *N.J.Super.* at 24–25, 242 *A.*2d 873.]

Given the chronology of events that has unfolded, we believe that those two interests are best served by permitting the scheduled referendum to proceed.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—None.