198 N.J. Super. 531 (1984)
487 A.2d 1266
GUS D'ERCOLE, PLAINTIFF-APPELLANT,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF NORWOOD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND NORWOOD FIRE COMPANY NO. 1, A CORPORATION OF THE STATE OF NEW JERSEY, INTERVENOR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1984.
Decided November 16, 1984.
*533 Before Judges McELROY, DREIER and SHEBELL.
*534 Kenneth Dolecki argued the cause for appellant (Bruce S. Koppel, attorney).
Allan P. Browne argued the cause on behalf of respondent Norwood Fire Company No. 1 (Breitenstein & Browne, attorneys; Allan P. Browne on the brief).
Francis J. DeVito argued the cause on behalf of respondent Borough of Norwood (letter filed reversing position of Borough below and relying on brief of appellant).
The opinion of the court was delivered by McELROY, P.J.A.D.
This appeal arises from a complaint in lieu of prerogative writ filed by appellant to challenge the validity of an ordinance adopted by the Borough of Norwood. The ordinance authorized the borough to enter into a 20 year lease of a firehouse owned by defendant, Norwood Fire Company No. 1, the borough's volunteer fire company.
Plaintiff-appellant contends the ordinance is invalid because it authorized a transaction by which the borough effectively guaranteed the fire company's mortgage, a transaction plaintiff apparently regards as impermissible under N.J.Const. (1947) Art. VIII, § III, par. 2. Plaintiff also asserts the borough lacked statutory authority to sign a long-term lease and that the lease was violative of N.J.S.A. 40A:11-15 and N.J.S.A. 40A:4-57. Lastly, plaintiff urges that because a petition was filed protesting the ordinance, a public referendum was required by N.J.S.A. 40:49-27. We affirm the judgment entered in favor of the defendants.
The facts are simple and are not in material dispute. The firehouse is the only fire safety facility in the borough. It has always been owned by the fire company and in the past was leased to the borough to house the borough's fire fighting equipment as well as equipment and materials used by the borough's public works department. The last written lease was for a term from January 1, 1977 to December 31, 1979. Thereafter *535 the borough remained as tenant without a written lease. Eventually it became apparent that the building was inadequate for borough purposes. The volunteer fire company proposed that it would build an addition of 2,100 square feet and in order to obtain a $100,000 mortgage for this project, sought assurances that the borough would lease the enlarged facility. It proposed the long-term lease. The borough council agreed to lease and decided to build a separate garage for the public works department at another location.
On June 7, 1983 the council passed an enabling ordinance which authorized a 20 year lease commencing July 1, 1983 and terminating June 30, 2003. The lease required rental payments in accordance with a schedule which totaled $265,230.31 over the 20 year term. The ordinance provided that payments under the lease "shall be made annually from budget appropriations in the manner prescribed by law pursuant to the provisions of the Local Budget Law of the State of New Jersey."
This matter was considered by the trial court on oral argument, briefs and certifications of plaintiff, who was a former councilman, and Barry Scott, a councilman who served when the ordinance authorizing the 20 year lease was passed. These documents devote much space to arguing the merits of the lease agreement in contrast to other means of housing the fire company, the public works department and the volunteer ambulance organization. None of these arguments has any relevance to the purely legal questions posed by this appeal. It is apparent that the problem of housing for the fire company has been a political issue in the borough for a number of years. We note that there has been a change in the makeup of the council and the present governing body now adopts plaintiff's arguments. The only true respondent on appeal is the fire company. It is not the function of this court to weigh the respective merits of the ordinance and lease here considered against other feasible methods of resolving the housing requirements of the fire company and to substitute its judgment for *536 that of the borough's elected officials. Viera v. Town Coun. Tp. Parsippany-Troy Hills, 156 N.J. Super. 19, 22 (App.Div. 1977).
Plaintiff's certification reveals that at about the same time it adopted the firehouse lease ordinance the borough passed a bonding ordinance for the construction of a building for the use of the public works department. When this ordinance was submitted to a public referendum it was rejected by the electorate and then rescinded by the council. On July 6, 1983 plaintiff presented a petition bearing statutorily sufficient signatures protesting the lease ordinance and sought to have the question submitted to public referendum. The council refused to do so.
Although plaintiff's brief does not directly cite the State Constitution, it is apparent that his argument that the lease was an "impermissible guaranty by the municipality of the fire company's long term mortgage debt" must be premised upon N.J.Const. (1947), Art. VIII, § III, par. 2. That segment of the Constitution provides:
No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.
It is clear that the wherewithal to finance the fire company's addition to the fire house was the $100,000 mortgage and that the long-term lease would facilitate the loan of that sum. From this premise springs plaintiff's contention that the lease was an impermissible indirect guaranty by the borough of the indebtedness of the fire company. The argument only possesses facial appeal. Unlike the factual situation in DeLorenzo v. Hackensack, 9 N.J. 379 (1952), upon which plaintiff relies, the lease here considered is an ordinary lease limited to the usual rights and obligations of such a document. There is in this case no implicit guaranty by the borough of its credit as there was in DeLorenzo. In that case the city, under the guise of a lease had committed itself to subsidize the parking authority's operations by annually providing the difference between that which *537 the authority earned in its operation of the parking lot and that which the authority was obligated to pay on its bonds. Moreover, the question in DeLorenzo required analysis of the arrangement there entered in light of specific statutes, not here applicable. The question was whether L. 1948, c. 198 and other legislation permitted the type of participation there attempted by the municipality. Upon analysis, the Court concluded that despite statutory provision for loans or grants to the authority, there was no legislative authorization for municipal guaranty of payment of the authority's bonds. DeLorenzo, 9 N.J. at 386-389. Indeed, the statute there reviewed contained an express statement that the bonds of the authority were not to be a debt of the municipality. Id. at 387. Clearly, the case is inapposite both as to its facts and its legal principles.
Equally, Gallo v. Weehawken, 181 N.J. Super. 385 (Law Div. 1981) furnishes no support to plaintiff's argument. Gallo dealt with the ability of Weehawken to extend credit to support a bond issue of the Weehawken Municipal Port Authority. Neither the authority nor the private lessees who were to be tenants of the authority's refrigeration plant and warehouse project had sufficient credit to support the authority's bond issue. There, as in DeLorenzo, a lease was covertly used to circumvent a specific statutory prohibition of municipal guaranty of the authority's bonds. Id., 9 N.J. at 388. The present case demonstrates no such problem and involves no similar statutory prohibition.
DeLorenzo and Gallo are only similar to this case because all three cases involve a lease. Any factual analogy fades when one considers the lease here involved does not constitute a municipal guaranty of the fire company mortgage. It only incidentally may make that mortgage commercially feasible in the sense that the lessor may borrow money on the strength of rental expectancies but it places no obligation on the borough to pay the fire company mortgage. The benefit the fire company receives is one common to similar transactions in the business world. It is unrealistic to expect any landlord to enlarge or *538 renovate a building to suit the needs of a particular tenant without assurance that the tenant will continue to occupy the premises for a period sufficient to justify the added expense.
Bulman v. McCrane, 64 N.J. 105 (1973) more closely approximates this case. The Court there considered application of N.J.Const. (1947) Art. VIII, § II, par. 3 to a case where the State proposed to take a 25 year lease on a building to be erected by a developer upon state owned land. The building was to be used by the State to house its printing facility and to store records. "The State was to have the option to purchase at fixed, progressively declining figures during the 10th, 15th and 20th years of the lease, failing which, title to the State would revert at the end of the term." Id. at 107. N.J.Const. (1947) Art. VIII, § II, par. 1, like Art. VIII, § III, par. 2, which prohibits municipalities from the "loan [of] its money or credit" to "or in aid of any individual, association or corporation, or become security for ... any association or corporation," prohibits the credit of the State to be "directly or indirectly loaned in any case." In Bulman the plaintiff-taxpayer challenged the lease as an unconstitutional loan of the State's credit. The Court rejected this contention for two reasons:
... The fact that a lessor to the State is able to borrow money on the strength of the expectancy of the rentals to be received is obviously not, as argued, a loan of the State's credit. Moreover, the public nature of the enterprise insulates it against attack through the loan-of-credit clause even when there is incidental benefit to a private entity. [Bulman, 64 N.J. at 118-119].
The lease here considered is of the same character. It is an exercise of the considerable degree of discretion vested in the governing body and is within its delegated authority. It may not be the best solution to the problem of housing necessary municipal equipment but it is not demonstrated by the evidence to amount to an agreement entered into a bad faith, fraud, corruption or as one resulting from a palpable abuse of discretion. The need to properly house the borough's fire department is apparent and this is the public benefit achieved through the lease. All that is here demonstrated is that there are other *539 ways in which this could be accomplished. The wisdom of the course chosen is a political judgment and is not, in these circumstances, a matter for the court. Viera, 156 N.J. Super. at 22; see also, Newark v. N.J. Turnpike Authority, 7 N.J. 377, 383 (1951) (same principle applied to action of a state authority).
In any event, the lease had governmental purpose and implicated the public welfare and safety. Even if the effect of the lease were to be considered an indirect extension of municipal credit it is not unconstitutional if it primarily serves the public purpose. The intent of N.J.Const. (1947) Art. VIII, § III, par. 2 and its prohibition against municipal loan of money or credit to any individual, association or corporation is clearly the same as the similar constitutional proscription as to the loan of the State's credit in Art. VIII, § 2, par. 1. Article VIII has been construed as intending that "public monies be raised and used only for public purposes." Roe v. Kervick, 42 N.J. 191, 207 (1964). In Roe the Court held that both sections of Article VIII brought this fundamental doctrine of government "into the organic law and thus established as basic policy a prohibition against lending the credit of the State directly or indirectly, or loaning, giving or donating its money or property or that of its subdivisions to or for the use of an individual, association or corporation for private purposes." Ibid. Roe recognized the delineation of that which constitutes a public purpose is incapable of exact definition. The Court indicated that:
[t]he concept of public purpose is a broad one. Generally speaking, it connotes an activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government. Moreover, it cannot be static in its implications. To be serviceable it must expand when necessary to encompass changing public needs of a modern dynamic society. Thus it is incapable of exact or perduring definition. In each instance where the test is to be applied the decision must be reached with reference to the object sought to be accomplished and to the degree and manner in which the object affects the public welfare. [Ibid.]
The applicable principle, well established in our law, is that the judiciary will defer to the will of the lawmakers "whenever *540 reasonable men might differ as to whether the means devised to meet the public need conform to the Constitution." Id. at 229. Equally to be considered is the "doctrine that the means are presumptively valid, and that reasonably conflicting doubts should be resolved in favor of validity." Ibid.
There are, of course, in this lease benefits to the fire company, an organization private in nature but whose own aims are primarily devoted to public safety and thus tied to a fundamental governmental purpose. This factor gives the transaction here considered an unusual double purpose. The judicial constitutional inquiry must seek the primary objective of the lease here authorized by the ordinance. The public purpose inherent in providing firehouse facilities to the community, the primary benefit to the public safety and welfare from this project and the governmental character of this endeavor need not be further labored. These are the primary objectives of the lease. We find this ordinance has no constitutional infirmity.
Plaintiff next contends that the ordinance must fall because it authorizes a lease for a period beyond one year. Here he relies upon N.J.S.A. 40A:11-15 which has since been amended, an amendment plaintiff overlooks. It formerly provided that "[a]ll purchases, contracts or agreements shall be made for a period not to exceed 12 consecutive months...." Relying on the statute as it previously read, plaintiff argues that it encompassed and thus prohibited a 20 year lease of realty. This argument has no merit. Whatever foundation this statute may have given to such a contention in the past was removed by the amendment to this provision enacted by L. 1983, c. 176, effective May 9, 1983. The amendment's effective date precedes the adoption of the ordinance, on June 7, 1983, and the subsequent execution of the firehouse lease. The 1983 amendment to N.J.S.A. 40A:11-15 in pertinent part reads:
*541 40A:11-15. Duration of certain contracts
All purchases, contracts or agreements for the performing of work or the furnishing of materials, supplies or services shall be made for a period not to exceed 12 consecutive months.... [Emphasis ours].
The introductory statement accompanying this amendment is illuminating. It provides:
[t]his bill amends the section (C.40A:11-15) of the `Local Public Contracts Law' which establishes the permissible duration of those contracts to specify that it applies only to agreements for the performing of work or furnishing materials, supplies or services. It has been questioned whether this section could be applied to leases of real property and thus limit those leases to 12 months. The Legislature clearly intended leases to be governed by the `Local Lands and Buildings Law,' P.L. 1971, c. 199 (C.40A:12-1 et seq.) when that law was enacted contemporaneously with the `Local Public Contracts Laws' and this amendment clarifies that intent.
The Local Lands and Buildings Law, N.J.S.A. 40A:12-15 expressly permits municipalities to enter into long-term leases. It provides:
A leasehold for a term not in excess of 50 years may be made pursuant to this act and extended for an additional 25 years by ordinance or resolution thereafter for any county or municipal public purpose, including, but not limited to:
(a) The provision of fire protection, first aid, rescue and emergency services by an association duly incorporated for such purposes.
Although this statute clearly applies to leases of the type here involved, plaintiff argues the statute was intended to apply solely to situations where the municipality is the lessor. The basis for this contention is that "the reported cases construing that statute deal with the Municipality as a landlord and not, as in the instant matter, as tenant." We reject this argument. The language of the statute does not contain the limitation plaintiff seeks to read into it. It applies to any leasehold interest made for a public purpose.
Plaintiff also argues that a long-term lease of realty by a municipality is prohibited by the Local Budget Law. N.J.S.A. 40A:4-57. This statute prohibits governing bodies from expending any money, incurring any liability or entering into contracts which involve the expenditure of money "for any purpose for which no appropriation is provided...." Plaintiff asserts that this statute was designed to prevent the incurring *542 of a long-term obligation in excess of the borough's annual budgetary appropriations. N.J.S.A. 40A:4-57, however, makes the following exception:
Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for ...
b. Contracts or leases the terms of which exceed the fiscal year in which such contracts are made, when provided by law; ....
Plaintiff's brief recognizes this exception but argues that it could not apply here because N.J.S.A. 40A:11-15 and N.J.S.A. 40A:12-15(a) prohibited a 20 year lease or the execution of such a lease where the municipality acts as a lessee. We have already demonstrated the lack of foundation for those arguments. As a result, this point also falls.
Plaintiff next contends that the amount scheduled in this lease for annual rental requires a payment of $13,533 for 1984-1985 and this sum together with other fire safety expenditures may exceed the limits set by the "cap law." The argument is made in an off-handed fashion, is not supported by citations and is not set up as a point to be argued as required by R. 2:6-2(a)(5). The "facts" supportive of this argument given in plaintiff's trial court certification are not bolstered by any documentation supportive of 1983 budget figures and furnish no valid 1984 data necessary to determination. We are thereby in no position to fairly consider any such issue and decline to address this question.
Lastly, plaintiff argues that N.J.S.A. 40:49-27 requires a public referendum be held on the question of whether the borough should enter into the firehouse lease.[1] Subsection 27 provides:
Any ordinance authorizing the incurring of any indebtedness, except for current expenses shall become operative ten days after the publication thereof *543 after its final passage, unless within said ten days a protest against the incurring of such indebtedness shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last preceding assessment roll thereof, in which case such ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition, subject to the provisions of sections 40:49-10 to 40:49-12 of this title.
It is undisputed that plaintiff's protest provision was filed in timely fashion and otherwise met the statutory requisites.
The political power inherent in the people (N.J. Const. (1947) Art. VIII, § III, par. 2) has been construed in this state as not encompassing the right to local initiative or referendum unless that right is granted by statute. Smith v. Tp. of Livingston, 106 N.J. Super. 444, 452-453 (Ch.Div. 1969) aff'd o.b. 54 N.J. 525 (1969). See Bucino v. Malone, 12 N.J. 330, 345 (1953) ("In New Jersey local government has always been a creation of the Legislature. The people have no inherent right of local self-government beyond the control of the State."). Thus, the right of review of local action by referendum in a particular case must be determined from the governing statutory provision. Tp. of Sparta v. Spillane, 125 N.J. Super. 519, 523 (App.Div. 1973), cert. den., 64 N.J. 493 (1974). Where the right of referendum is statutorily granted, however, the grant is to be liberally construed "to promote, where appropriate, its beneficial effects." Retz v. Mayor & Coun. Tp. of Saddle Brook, 69 N.J. 563, 571 (1976). Liberality in construction is not, however, a substitute for this court's duty to give effect to the intent of the Legislature as we can reasonably discern it in N.J.S.A. 40:49-27.
The statute does not define what is meant by "any indebtedness" but it clearly excludes an indebtedness involving "current" expenses. Plaintiff urges that the lease authorized by the ordinance authorizes the borough to incur "a long-term indebtedness under the guise of a lease ... thereby circumventing bonding requirements."
*544 We have already determined that the lease is not a "guise" by which the borough undertook to guaranty the fire company's contemplated mortgage debt. The proofs here presented do not demonstrate it is a cover under which the borough sought to avoid bonding a necessary local improvement. It is a valid lease statutorily permitted by N.J.S.A. 40A:12-15 to be entered for the term agreed upon. The agreed annual rent is not demonstrated as unreasonable. It is a method employed to resolve a governmental need taken in the exercise of the governing body's broad discretion and is presumptively a valid exercise of that discretion. The obligation of the borough under the lease is for future annual payments of rent but the ordinance requires that those payments "shall be made annually from budget appropriations in the manner prescribed by law pursuant to the provisions of the Local Budget Law of the State of New Jersey." N.J.S.A. 40A:4-57(b) permits this lease to be paid by the annual payments which the lease requires. The money, to be appropriated on an annual basis, is a fixed and current yearly expense of local government necessary for carrying out the governmental duty of providing fire protection to the community. The ordinance here questioned is the embodiment of an executive or administrative decision to resolve a part of that duty by a lease for a fixed term of years, payable as part of the annual budget.
The ordinance is not legislative in character. It is well established that only enactments of a legislative nature are proper subjects of referendum. Smith v. Tp. of Livingston, 106 N.J. Super. at 457; Cuprowski v. Jersey City, 101 N.J. Super. 15 (Law Div. 1968), aff'd o.b., 103 N.J. Super. 217 (App.Div. 1968), cert. den., 53 N.J. 80 (1968). The principle is rooted in realism. Clearly, all municipal action cannot be subject to local review by the electorate. "If government is to function there must be some area in which representative action will be final. In many situations it is difficult to determine how far the limitations should go. The courts must draw the line in these situations and in so doing must balance two interests  the *545 protection of city government from harassment as against the benefits of direct legislation by the people." Cuprowski, 101 N.J. Super. at 24-25.
N.J.S.A. 40:49-27 uses general terms as to the referendum right. It speaks of "[a]ny ordinance authorizing the incurring of any indebtedness...." (emphasis ours). The use of such general terms is not to be taken as evidence of legislative intent to make an executive or administrative decision subject to local review by referendum. Smith v. Tp. of Livingston illustrates this point. There the court dealt within the initiative right granted by N.J.S.A. 40:69A-184 which provided that local voters may propose "any ordinance." The court held that this general term did not give local voters the right to initiate zoning ordinances. The court concluded:
[i]n reaching this conclusion I am mindful of the fact that N.J.S.A. 40:69A-184 specifically provides that the voters of any municipality may propose `any ordinance'. However, `any ordinance' does not mean `all ordinances'. In Cuprowski v. Jersey City, 101 N.J. Super. 15 (Law Div. 1968), affirmed o.b. 103 N.J. Super. 217 (App.Div. 1968), the court stated that when the Legislature referred to initiative or referendum, it did not intend to include resolutions or ordinances of an executive or administrative nature. See also McCrink v. Town of West Orange, 85 N.J. Super. 86 (App.Div. 1964), and Snow v. Bell, 105 N.J. Super. 484 (Ch.Div. 1969). [Smith, 106 N.J. Super. at 457].
One test for determining whether municipal action is legislative or administrative is set forth in Cuprowski:
Acts which are classified as administrative are those which result from governmental powers properly assigned to the executive department and necessary to carry out legislative policies and purposes already declared either by the legislative municipal body, or devolved upon it by the law of the state. [101 N.J. Super. at 23].
The ordinance here considered is of that character. N.J.S.A. 40A:12-15 grants to the borough the discretion to enter into a long-term lease "for any ... municipal public purpose." The execution of this lease is a discretionary executive action undertaken "to carry out legislative policies and purposes ... devolved upon ... [the governing body] by the law of the state." Cuprowski, 101 N.J. Super. at 23. The right to incur a debt for annual rental is implicit in the legislative grant of the right to *546 enter such a lease and its payment is from current funds on an annual basis. The total sum payable over the term of the lease is not a present debt. See Bulman v. McCrane, 64 N.J. at 117-118. Accordingly, we affirm the trial judge's decision that this ordinance is not a proper subject for referendum.
The judgment entered October 5, 1983 in favor of defendant is affirmed.
NOTES
[1] In the trial court plaintiff also urged that N.J.S.A. 40:49-9 required a public referendum on this question. That statute is only lightly touched in plaintiff's appeal brief. It deals with a referendum as to an ordinance authorizing "any improvement." The ordinance in question is clearly not of that character. It authorizes a legitimate lease and is not an ordinance for a local improvement.