739 A.2d 430 (1999)
325 N.J. Super. 329
WE THE PEOPLE COMMITTEE, INC., a New Jersey Non Profit corporation whose members include several taxpayers, homeowners and voters in the City of Elizabeth, Plaintiff-Appellant
v.
CITY OF ELIZABETH and Anthony R. Pillo, City Clerk of the City of Elizabeth, and Liberty Water Company, a New Jersey Corporation, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1999.
Decided October 28, 1999.
Marvin Lehman, Elizabeth, for plaintiff-appellant.
Reed Smith Shaw & McClay, for defendant-respondent Liberty Water Company (Steven J. Picco, of counsel; James E. McGuire, Princeton, on the brief).
DeCotiis, Fitzpatrick & Gluck, attorneys for defendants-respondents City of Elizabeth and Anthony R. Pillo (Jonathan L. Williams, Teaneck, of counsel; R. Brian McLaughlin, Trenton, on the brief).
Before Judges BAIME, WECKER and BILDER.
The opinion of the court was delivered by *431 BAIME, P.J.A.D.
Plaintiff brought this action to compel the Elizabeth City Clerk to accept for filing a referendum petition calling for the repeal of an ordinance privatizing the City's water supply system. On the parties' cross-motions, Judge Beglin entered a judgment in favor of the City. Plaintiff appeals. We hold that an ordinance adopted pursuant to the New Jersey Water Supply Public-Private Contracting Act (N.J.S.A. 58:26-19 to -27) (Water Supply Act) is not subject to the referendum process.

I.
We need not recount the facts at length. Since 1930, the City has owned and operated its water distribution system. In 1997, however, the City began to explore the possibility of contracting with a private company for the operation, management and maintenance of its system. A "project team" consisting of legal, technical and financial advisors was created to examine various options. On December 2, 1997, the City published a notice of its "intent to contract," soliciting proposals from private companies. Five private entities responded. After evaluating these proposals, the City conducted extensive negotiations with Liberty Water Company over a seventy day period. Ultimately, the City and Liberty executed a proposed long term contract under which Liberty would supply water to municipal residents.
On April 1, 1998, the City published a notice of public hearing. The notice set forth the date, time, location and purpose of the public hearing, and apprised interested parties that they could obtain copies of the proposed agreement and could present questions and statements. The hearing was conducted on April 15, 1998. The historical and procedural background of the project and the terms and conditions of the proposed agreement were explained in detail. The public record was held open for seven days after the hearing to permit the presentation of written statements.
Detailed submissions were made to the Local Finance Board within the Department of Community Affairs, the Department of Environmental Protection, and the Board of Public Utilities. The proposed agreement was subsequently endorsed by the DEP and approved by the Local Finance Board and the BPU.
Following the enactment of an ordinance adopting the City's agreement with Liberty, plaintiff, a nonprofit corporation consisting of residents and homeowners, filed a petition seeking a referendum. The City Clerk rejected plaintiff's petition, concluding that the ordinance was not subject to the referendum process. This litigation followed.

II.
The novel question presented is whether the Faulkner Act's referendum process is applicable to an ordinance privatizing a municipality's water distribution system pursuant to the Water Supply Act. N.J.S.A. 40:69A-185 grants the power of referendum to the voters in a Faulkner Act municipality. The statute gives to the voters "the power to approve or reject at the polls any ordinance ... passed by the council." Ibid. We have liberally construed this statutory provision to promote the salutary objective of popular participation in local government. D'Ercole v. Mayor of the Borough of Norwood, 198 N.J.Super. 531, 543, 487 A.2d 1266 (App. Div.1984); In re Certain Petitions for Binding Referendum, 154 N.J.Super. 482, 484, 381 A.2d 1217 (App.Div.1977); Cuprowski v. Jersey City, 101 N.J.Super. 15, 27, 242 A.2d 873 (Law Div.), aff'd o.b., 103 N.J.Super. 217, 247 A.2d 28 (App.Div.), certif. denied, 53 N.J. 80, 248 A.2d 433 (1968); see also Retz v. Mayor of the Township of Saddle Brook, 69 N.J. 563, 571, 355 A.2d 189 (1976). However, it has been said that the phrase "any ordinance" in the Faulkner Act's provisions for referendum "does not mean `all ordinances.'" Tumpson v. Farina, 120 N.J. 55, 57, 575 *432 A.2d 1368 (1990). In a variety of factual settings, we have found a supervening legislative intent to bar a plebiscite on certain municipal ordinances. See, e.g., D'Ercole v. Mayor of the Borough of Norwood, 198 N.J.Super. 531, 487 A.2d 1266 (ordinance authorizing lease of firehouse not subject to referendum); In re Certain Petitions for Binding Referendum, 154 N.J.Super. 482, 381 A.2d 1217 (traffic ordinance could not be proposed by initiative petition); Township of Sparta v. Spillane, 125 N.J.Super. 519, 312 A.2d 154 (App.Div. 1973) (zoning ordinance not subject to referendum); see also Smith v. Township of Livingston, 106 N.J.Super. 444, 256 A.2d 85 (Ch.Div.1969) (ordinance regulating use of water and fixing meter rates not subject to referendum); Atlantic City Housing Action Coalition v. Deane, 181 N.J.Super. 412, 437 A.2d 918 (Law Div.1981) (redevelopment ordinance not subject to referendum); Cuprowski v. Jersey, 101 N.J.Super. 15, 242 A. 2d 873 (budgetary ordinance not subject to referendum); but see Menendez v. City of Union City, 211 N.J.Super. 169, 511 A.2d 676 (App.Div.1986) (ordinance increasing number of fire captains is subject to referendum). In finding a legislative design to foreclose referendum or initiative, we have emphasized in appropriate cases the danger of encouraging uncoordinated tampering by the electorate with a comprehensive statutory scheme. Atlantic City Housing Action Coalition v. Deane, 181 N.J.Super. at 419, 437 A. 2d 918. In a somewhat related context, we have considered whether the action of the electorate would subvert or bypass procedures mandated by the legislature, id. at 421, 437 A.2d 918, and whether the municipal action is subject to state approval. In re Certain Petitions for Binding Referendum, 154 N.J.Super. at 487, 381 A.2d 1217.
With these considerations in mind, we examine the Water Supply Act to determine whether that statutory scheme was intended to trump the Faulkner Act's referendum provisions. The Water Supply Act authorizes municipalities to enter into long term contracts for the provision of water distribution services. Adopted in 1995, the legislation was intended to serve as a "useful alternative" for municipalities to avail themselves of the "expertise of the private sector in water supply and treatment." Assembly Local Government Committee, Statement to S.1292 (March 9, 1995). In its findings and declarations, the Legislature determined that there was a need to permit "local government units ... to utilize [the] expertise, experience and resources [of private firms] ... to comply with the ... stringent requirements" contained in recently enacted federal and state statutes to "assure conformance with environmentally sound water quality standards." N.J.S.A. 58:26-20. Although the Legislature had enacted the New Jersey Water Supply Privatization Act (N.J.S.A. 58:26-5 to -12) in 1985 with the same articulated statutory objective, "the time consuming procedures" and cumbersome "regulatory framework" required by that legislation were found to have "dissuaded private firms and local government units from entering into [privatization] contracts." Ibid.
The Water Supply Act nevertheless provides an elaborate and detailed set of procedures a "public entity must follow" in order to privatize its water supply system. N.J.S.A. 58:26-19. The Act requires "public notice" of its intent to enter into a privatization agreement, N.J.S.A. 58:26-23a, a specification of the type of "services desired," N.J.S.A. 58:26-23b, a review and evaluation process respecting the proposals that are submitted, N.J.S.A. 58:26-23c, a written "statement of the reasons" for selecting a particular qualified proposal to be made available to the public along with the proposed contract, N.J.S.A. 58:26-23d, and a public hearing at which the local government unit is to "explain the terms and conditions of the proposed contract" and "answer questions raised by prospective consumers and other interested parties," N.J.S.A. 58:26-24c. The Act further provides that a "verbatim record of the public hearing ... [must] be kept open *433 for a period of seven days" to allow interested parties to submit written statements. N.J.S.A. 58:26-24d. In addition, the public entity is required to prepare a "written hearing report," consisting of the proposed contract, the statement of reasons for selecting a particular proposal, the stenographic record of the public hearing, the written statements submitted, and "a statement ... summarizing the major issues raised ... and the [local government unit's] responses" to those questions. Ibid. Copies of the report are to be made available to interested parties upon request. Ibid.
The Act requires that the proposed contract be reviewed by the Local Finance Board, the BPU and the DEP. N.J.S.A. 58:26-24f. The BPU is to determine whether: (1) the private firm entering into the contract "has the financial capacity and technical and administrative experience to ensure continuity of service," (2) the terms of the contract are reasonable, (3) the franchise customers are protected, and (4) the agreement contains all of the contractual terms required by N.J.S.A. 58:26-3. N.J.S.A. 58:26-25c. The Local Finance Board is to determine whether: (1) the terms of the contract "materially impair the ability of the public entity to pay principal and interest due on its outstanding indebtedness and to supply other essential public improvements and services," (2) a "concession fee or other monetary benefit" has been paid to the municipality and, if so, whether the purpose of such concession or monetary benefit is to reduce property taxes, and (3) the contract contains the terms prescribed by N.J.S.A. 58:26-23. N.J.S.A. 58:26-25d. The BPU and the Local Finance Board may approve, conditionally approve or reject the proposed agreement. N.J.S.A. 58:26-25c and -25d. The DEP may provide comments respecting the proposal, and must enforce applicable standards as to water supply and water quality. N.J.S.A. 58:26-24f; see also Assembly Local Government Committee, Statement to S.1292 (March 9, 1995).
Against this statutory backdrop, we are in accord with Judge Beglin's conclusion that the elaborate regulatory and administrative framework set forth in the Water Supply Act was intended to supplant the Faulkner Act's referendum provisions. In adopting the Water Supply Act, the Legislature gave comprehensive and precise treatment to the subject of privatization of a municipality's water supply, and afforded the public ample opportunity to engage in debate on the issue. The referendum process would serve as a competitive source of lawmaking wholly at odds with the Legislature's carefully crafted treatment of the problem. If we were to hold that the referendum process is applicable, we would expose the comprehensive privatization process provided by the Water Supply Act to the possibility of fragmentation or disruption by the uncoordinated and isolated actions of the local electorate. Instead, we discern a supervening legislative design that the Water Supply Act's minute and definitive treatment of the subject fully occupies the field.
Accordingly, the judgment of the Law Division is affirmed.