778 A.2d 598 (2001)
343 N.J. Super. 367
MILLENNIUM TOWERS URBAN RENEWAL LIMITED LIABILITY COMPANY, Plaintiff,
v.
MUNICIPAL COUNCIL OF THE CITY OF JERSEY CITY, A Municipal Corporation of the State of New Jersey, Robert Byrne, Municipal Clerk of the City of Jersey City, Robert Duval, Vito Brunetti, Maria E. Tuzzo, Barbara Petrick & Elisabeth Duval, Defendants.
Superior Court of New Jersey, Law Division, Civil Part Hudson County.
Decided January 22, 2001.
*600 O'Donnell, Kennedy, Vespole & Piechta, attorneys for plaintiff, John F. O'Donnell, appearing.
Sean M. Connelly, Corporation Counsel, attorney for defendants Municipal Council of the City of Jersey City, and Robert Byrne, Municipal Clerk of the City of Jersey City, Joanne Monahan, appearing.
Robert T. DuVal, attorney for defendants Robert DuVal, Vito Brunetti, Maria E. Tuzzo, Barbara Petrick and Elisabeth DuVal.
*599 FUENTES, J.S.C.
This matter comes before the court on a Verified Complaint in Lieu of Prerogative Writs filed by plaintiff, Millennium Towers Urban Renewal, L.L.C. ("Millennium Towers"). On November 20, 2000, Plaintiff presented an Order to Show Cause with Temporary Restraints along with an accompanying brief before Judge Mark J. Nelson. Judge Nelson issued the Order to Show Cause, making it returnable on December 15, 2000. The return date was then adjourned by this court until January 16, 2001. The court heard oral argument *601 on that date. Plaintiff seeks from this court a declaratory judgment that the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to 40:20-20 is not subject to the Initiative and Referendum Law, N.J.S.A. 40:69A-184 to 209. This is an issue of first impression in this state.

FACTUAL FINDINGS AND PROCEDURAL HISTORY
Plaintiff is a limited liability company formed for the construction of the Millennium Towers project. Millennium Towers is a large-scale residential and commercial project scheduled to be constructed in the City of Jersey City. The location of the project is commonly known by the street address of Grove Street to Jersey Avenue at 19th Street and encompasses 3.084 acres. This property is within the Jersey Avenue Redevelopment Plan Area, ("Plan")so designated following the passage by the Municipal Council of a redevelopment plan pursuant to the Local Redevelopment and Housing law, N.J.S.A. 40A:12A-1, to 40A:12A-49[1]. This project will consist of two 43-story towers, containing approximately 148,298 gross square feet of retail/restaurant space, 523 market rate residential rental units and over 800 parking spaces.
Millennium Towers applied for a 20 year long term tax exemption of the property pursuant to N.J.S.A. 40A:20-1 to 40:20-20. On August 16, 2000 the Jersey City Municipal Council introduced Ordinance # 00-112, an ordinance seeking to grant the plaintiff a 20 year tax abatement pursuant to the Long Term Tax Exemption Law. Pursuant to Ordinance # 00-112 plaintiff agreed to pay $2,370,259.00 a year to Jersey City in service charges or 15% of the gross revenues earned by the Towers site whichever was found to be greater, in lieu of property taxes. The above fee will be subject to statutory staged increases over the term of the tax exemption. Furthermore, plaintiff agreed to pay an annual sum equal to 2% of each year's annual service charge as an administrative fee and provide employment and other economic opportunities for residents and businesses of Jersey City.
On September 13, 2000, the City Council held a second reading of Ordinance # 00-112 at its regularly scheduled meeting. The City Council at that time passed Ordinance # 00-112 by a five to four majority.
On September 16, 2000, the petitioner-defendants began a drive to gather signatures for a Referendum Petition to protest Ordinance# 00-112. Pursuant to N.J.S.A. 40A:69-184, a successful petition required 2,472 valid signatures of registered voters residing in Jersey City. On October 3, 2000 the Committee of petitioners submitted 237 petitions containing 3,343 signatures.
On October 23, 2000, the City Clerk certified that only 2,437 signatures were verified after a review of the submitted petitions. On November 1, 2000, the Committee of Petitioners submitted an additional 56 petitions containing 651 signatures. On November 6, 2000 the City Clerk certified that the petitioners had the necessary number of valid signatures.
Plaintiff seeks a permanent injunction against the Jersey City Municipal Council and the City Clerk prohibiting them from taking any further action pursuant to the Initiative and Referendum Law, to repeal *602 Ordinance # 00-112. Plaintiff further seeks a declaration from this court finding that the Long Term Tax Exemption Law, is not subject to the Initiative and Referendum Law.

LEGAL ANALYSIS
The political power of the people of the State of New Jersey does not include the right to local initiative or referendum unless that right is granted by statute. See Smith v. Tp. Of Livingston, 106 N.J. Super. 444, 452-453 (Ch. Div. 1969). "Where the right of referendum is statutorily granted, however, the grant is to be liberally construed to promote, where appropriate, its beneficial effects." D'Ercole v. Mayor and Council of the Borough of Norwood, 198 N.J.Super. 531, 487 A.2d 1266 (App.Div.1984), quoting, Retz v. Mayor & Coun. Tp. of Saddle Brook, 69 N.J. 563, 571, 355 A.2d 189 (1976). Although, referendum provisions are to be liberally construed, it was not the intent for such provisions to grant unlimited and unqualified rights to citizens to challenge the acts of local municipal governments. See Cuprowski v. City of Jersey City, 101 N.J.Super. 15, 25, 242 A.2d 873 (Law Div.1968). "The courts must draw the line in these situations and in so doing must balance two interests... the protection of city government from harassment as against the benefits of direct legislation by the people." Id. at 24-25, 242 A.2d 873.
Municipal corporations have both legislative and administrative powers, but only those acts which are legislative in nature are subject to the referendum provisions of N.J.S.A. 40:69A-185. See Cuprowski 101 N.J.Super. at 23, 242 A.2d 873. "An act purely executive or administrative in character is not an exercise of legislative power and therefore is not subject to recall by referendum." Id.
The courts have developed several tests to determine the administrative or legislative nature of the ordinance or resolution.
Matters which are of a permanent or general character are considered to be legislative while those which are temporary in operation and effect are deemed administrative. Acts which are classified as administrative are those which result from governmental powers properly assigned to the executive department and necessary to carry out legislative policies and purposes already declared either by the legislative municipal body, or devolved upon it by the law of the state. Id. at 23, 242 A.2d 873, quoting Monahan v. Funk, City Auditor, 137 Or. 580, 3 P.2d 778 (1931); 62 C.J.S. Municipal Corporations s 454, p. 873.
The court in Cuprowski, quoting McQuillin, in his treatise on municipal corporations pointing out the distinction between administrative and legislative action:
In reference to what constitutes legislative and what administrative action in connection with restriction if the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. A construction of a provision that `any proposed ordinance' may be submitted to the commission by a petition signed by a specified number of qualified has been construed to mean any legislation measure of permanent operation can be so submitted...Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be *603 submitted to vote of the people under initiative and referendum statutes, which restricts submission to people to measures of permanent operation. 5 Mcquillin, Municipal Corporations (3d ed.), s 16.55, p. 255.
Subsequent to the court's decision in Cuprowski, the Appellate Division has rendered two diametrically opposed opinions further defining the difference between legislative and administrative acts. In D'Ercole v. Mayor & Council, Etc., 198 N.J.Super. 531, 487 A.2d 1266 (App.Div. 1984), the Appellate Division held an ordinance which approved the acquisition of a 20 year lease by the City was a "discretionary executive action undertaken to carry out legislative policies and purposes... devolved upon...[the governing body] by the law of the State." Id. at 545, 487 A.2d 1266. The Appellate Division in D'Ercole focused on one test set forth in Cuprowski for determining whether municipal action is legislative or administrative in nature:
Acts which are classified as administrative are those which result from governmental powers properly assigned to the executive department and necessary to carry out legislative policies and purposes already declared either by the legislative municipal body or devolved upon it by the law of the state. D'Ercole, 198 N.J.Super. at 545, 487 A.2d 1266, quoting Cuprowski, 101 N.J.Super. at 23, 242 A.2d 873.
In Menendez v. City of Union City, 211 N.J.Super. 169, 511 A.2d 676 (App.Div.1986), the Appellate Division held that the D'Ercole decision was contrary to the "legislative policy of encouraging citizen interest and participation in local government by provisions, which should be liberally construed, for the right of referendum." Id. at 171, 511 A.2d 676. The court in Menendez found that the D'Ercole decision formulated a distinction between legislative and administrative which would categorize almost all municipal action as administrative. "That definition encompasses the preponderance of municipal ordinances, which are adopted pursuant to legislative delegation to effectuate legislative policies and purposes but the specific terms of which, according to the discretion of the local governing body are adapted to local conditions." Id. The Menendez court employed the following definition of legislative and administrative ordinances in reaching its decision:
When a municipal governing body has latitude within its discretion in adopting the specific provisions of an ordinance, its enactment is legislative and subject to referendum, even though its authority to legislate on the subject has been delegated to it by State law. When a municipal governing body is merely complying with and putting into execution a State or local legislative mandate in adopting an ordinance, in effect exercising a ministerial function, its enactment is administrative and not subject to referendum. Id.

After careful consideration, this court will apply the definitions of legislative and administrative conduct formulated by the Appellate Division in Menendez in reaching its determination of the issues in the case at bar.
In this context, this court finds that the Municipal Council of Jersey City acted legislatively when it adopted Ordinance # 00-112. The Long Term Tax Exemption Law allowed the Municipal Council to negotiate with Millennium Towers and enter into a contractual agreement, which was subsequently formalized through the passage of an ordinance. The Long Term Tax Exemption Law does not mandate under what terms tax abatements should be granted, nor does it proscribe the form of the tax abatement. The law merely *604 authorizes municipalities to grant such abatements, it does not obligate them to do so. The Municipal Council exercised its own discretion in granting Millennium Towers a tax abatement. The ability of the Municipal Council to exercise such discretion demonstrates the legislative nature of its actions.
Determining whether the Municipal Council of the City of Jersey City acted legislatively when it enacted Ordinance # 00-112 is only a threshold question. A determination by this court that the Municipal Council acted legislatively in passing Ordinance # 00-112 does not automatically call for the holding of a ballot initiative. There are certain ordinances, whether administrative or legislative in character, which are simply not subject to referendum because of the subject matter involved or because they are statutorly excluded from referendum provisions. In Re Certain Petitions for Binding Referendum, 154 N.J.Super. 482, 381 A.2d 1217 (App.Div.1977), the court held that an initiative petition seeking the enactment of amendments to the traffic ordinances of the Village of Ridgefield Park were legally unavailable for that purpose since the court found convincing evidence that the Legislature considered the matter of traffic regulation as one requiring cooperative state and local action. Its impact had both regional as well as purely local import. In Township of Sparta v. Spillane, 125 N.J.Super. 519, 312 A.2d 154 (App.Div.1973), the court found the Faulkner Act not applicable to amendments of municipal zoning ordinances.
Against this legal backdrop, plaintiff asks this court to find that the Long Term Tax Exemption Law is an intergral part of the comprehensive Local Redevelopment and Housing Law. Plaintiff further argues that the Legislature intended the Long Term Tax Exemption Act to be exempt from attacks by citizen initiatives, in the same manner that the Local Redevelopment and Housing Law is statutorily exempt.
The Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to 12A-49 was enacted in 1992, "to codify, simplify and concentrate prior enactments relative to local redevelopment and housing to the end that the legal mechanisms for such improvement may be more efficiently employed." The Statute provides a comprehsive framework for municipal governments to follow in the development of a plan to rebuild and resurrect areas of their cities which have become "blighted" or in need of repair. No area of a municipality may be deemed "blighted" by the governing body of a municipality unless that governing body: (1) conducts a preliminary investigation; (2) provides notice for and conducts public hearings; (3) makes a determination that the redevelopment area is in fact blighted; (4) provides an opportunity for objection to such a determination; and (5) subjects the determination to judicial review, if necessary. N.J.S.A. 40A:12A-6. The Legislature in passing the Local Redevelopment and Housing Law made certain that once a redevelopment plan had been created by a municipal government it would not be subject to referendum.
No ordinance, amendment, or revision of any ordinance, or resolution under this act shall be submitted to or adopted by initiative or referendum, notwithstanding any other law to the contrary.[2]N.J.S.A. 40A:12A-28.
*605 Plaintiff argues that the Long Term Tax Exemption Law is an intergral part of the Local Redevelopment and Housing Act and should be construed in such a manner as to similarly exclude the tax exemption act from public initiative or referendum. Plaintiff relies upon the following language in the Long Term Tax Exemption Act for this proposition:
The Legislature declares that the provisions of this act are one means of accomplishing the redevelopment and rehabilitation purposes of the "Local Redevelopment and Housing Law," P.L.1992, c. 79 (C. 40A:12-1 et. al.) through the use of private entities and financial arrangements pertaining thereto, and that this act should be construed in conjunction with that act. N.J.S.A. 40A:20-2. (Emphasis added.)
Plaintiff contends that to "allow the approval of a Long term Tax Exemption to be subject to a referendum while municipal action pursuant to the Local Redevelopment and Housing Law is not subject to referendum would sanction uncoordinated tampering with a comprehensive legislative scheme and bypass the procedure mandated by the Legislature." Plaintiff's brief pg. 4.
Petitioner-defendants, on the other hand, argue that there was no legislative intent to exempt the Long Term Tax Exemption Law from public referendum. Furthermore, unlike the Local Redevelopment and Housing Law and the Municipal Land Use Law, the Long Term Tax Exemption Law does not provide for a comprehensive notice and hearing period, nor does it provide for judicial review.[3] Additionally, defendants argue that the Long Term Tax Exemption Law is not part of a comprehensive state act, but rather involves local issues being determined by local government officials. Defendant maintains that the ability of local officials to negotiate tax abatements on a case-by-case basis demonstrates the ability of local citizens to engage in referendum and not disturb any regional or state plan.
The Long Term Tax Exemption Law does not provide for a notice and hearing period, nor does the act provide for an opportunity to formally object to the abatement in the superior courts of this state. N.J.S.A. 40A:20-8 outlines the procedures a municipality must undertake prior to granting a tax abatement:
The application shall be addressed and submitted to the mayor or other chief executive officer of the municipality. The mayor or other chief executive officer shall, within 60 days of his receipt of the application thereafter, submit the application with his recommendations to the municipal governing body. The governing body shall by resolution approve or disapprove the application, but in the event of disapproval, changes may be suggested to secure approval. Id.

Defendant cites several cases to support its position that the public has been denied the right to ballot initiative only where the state has established a comprehensive scheme with regional or statewide application and where the statute provides for citizen participation and judicial review prior to the enacting of the ordinance. Atlantic City Housing Action Coalition v. Deane, 181 N.J.Super. at 412, 437 A.2d 918,; Sparta v. Spillane, 125 N.J.Super. 519, 312 A.2d 154 (App.Div.1973); We the *606 People Comm., Inc. v. City of Elizabeth, 325 N.J.Super. 329, 739 A.2d 430 (App.Div. 1999). In We the People, the court held that:
In adopting the Water Supply Act, the Legislature gave comprehensive and precise treatment to the subject of privatization of a municipality's water supply, and afforded the public ample opportunity to engage in debate on the issue. The referendum process would serve as a competitive source of lawmaking wholly at odds with the Legislature's carefully crafted treatment of the problem. Id at. 335, 739 A.2d 430.
This court holds that although the Long Term Tax Exemption Law does not provide for public hearings or judicial review, it, nevertheless, is an integral part of and a means of accomplishing the goals of the Local Redevelopment and Housing Law and therefore is not subject to referendum or initiative. "In statutory construction it is essential to ascertain the purpose for which the statute was enacted and the mischief it was intended to eliminate." Seatrain Lines, Inc. v. Medina, 39 N.J. 222, 188 A.2d 169 (1963). In resolving questions of statutory construction, the court's "task is to effectuate the legislative intent in light of the language used and the objects sought to be achieved." State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980).
[L]egislative intent may be implied from the language of a statute or inferred on grounds of policy or reasonableness...[S]tatutes are to be read sensibly rather that literally, and the controlling legislative intent is to be presumed as consonant to reason and good discretion. Courts should avoid interpreting a statute in a manner that leads to an absurd, anomalous, or unreasonable result. Rather, statutory interpretations should turn on the breadth of the legislative objectives and the common sense of the situation. The court must read statutes as a whole and give consideration to all related sections. Courts should consider not only the particular statute in question, but also the entire legislative scheme of which it is a part. Styles v. Township of Galloway, 323 N.J.Super. 191, 199-200, 732 A.2d 569 (Law Div.1999).
The Long Term Tax Exemption Law was enacted in 1991 and subsequently amended in 1992 following the passage of the Local Development and Housing Law. The law was amended to include the Legislature's declaration that the provisions of this act were to be construed in conjunction with the Local Redevelopment and Housing Law and that the Long Term Tax exemption Law was one means of accomplishing the purposes of the redevelopment act. N.J.S.A. 40A:20-2. The legislative findings and declarations found in N.J.S.A. 40A:20-2 and N.J.S.A. 40A:12A-1 mirror each other, thereby revealing the legislative plan.
Petitioner-defendant argues that the "construing" language found in N.J.S.A. 40A:20-2 refers only to the common terms and definition found in both N.J.S.A. 40A:20-1 to 40A:20-20 and N.J.S.A. 40A:12-1 to 40A:12A-49. Furthermore, the failure of the Legislature to expressly state that the Long Term Tax Exemption Law was not subject to referendum, precludes this court from so finding. Such an interpretation of the statute does not take into account the entire legislative scheme and would require an unreasonably narrow reading of the "construing" language.
The legislative intent that these two statutes work in concert to achieve a common legislative goal, to wit, the restoration to economic viability of heretofore "blighted" urban areas, is clear and omnipresent. N.J.S.A. 40A:12A-2 (b) provides:
From time to time the Legislature has, by various enactments, empowered *607 and assisted local governments in their efforts to arrest and reverse these conditions and to promote the advancement of community interests through programs of redevelopment, rehabilitation and incentives to the expansion and improvement of commercial, industrial, residential and civic facilities. (Emphasis added.)
N.J.S.A. 40A:20-2 provides:
The Legislature declares that the provisions of this act are one means of accomplishing the redevelopment and rehabilitation purposes of the "Local Redevelopment and Housing Law",...through the use of private entities and financial arrangements pertaining thereto, and that this act should be construed in conjunction with that act. (Emphasis added.)
The "financial arrangement" entered into by the City with Millennium Towers, in the form of a long term tax abatement, is clearly intended to provide an economic "incentive" to the developer. It is part of the redevelopment plan previously adopted by the municipality pursuant to the Local Redevelopment and Housing Law. This long term tax abatement is precisely the type of local authority intended by the Legislature to be vested exclusively in the municipal government.
The citizens of New Jersey have no constitutional right to initiative and referendum. This right comes directly form the Legislature. What the Legislature giveth, the Legislature can taketh away. In this case, this court holds that the Legislature intended the Long Term Tax Exemption Law to work hand in hand with the Local Redevelopment and Housing Law, to form a comprehensive legislative scheme to encourage and support local economic initiatives targeted at economically depressed areas. In so doing, the Legislature made clear that it did not want such municipally sponsored plans to be subject to the Initiative and Referendum Law. To hold otherwise would clearly frustrate the legislative intent so evident throughout both statutes.

CONCLUSION
Jersey City Ordinance Ordinance # 00-112, granting the plaintiff a 20 year tax abatement pursuant to N.J.S.A. 40A:20-1 to 40:20-20, the Long Term Tax Exemption Law, is not subject to the provisions of the Initiative and Referendum Law, N.J.S.A. 40:69A-184 to 209. Defendant Robert Byrne, Municipal Clerk of the City of Jersey City, is hereby permanently enjoined from acting upon or otherwise taking any action with respect to the petitions submitted and filed by defendants, Robert DuVal, Vito Brunetti, Maria E. Tuzzo, Barbara Petrick and Elizabeth DuVal on October 3, 2000, and November 1, 2000, and certified by the City Clerk on November 6, 2000, seeking a referendum election on whether said Municipal Ordinance should become a legally binding obligation of the municipality.
NOTES
[1] On March 14 and May 9, 2000 the Jersey City Planning Board held two public hearings in order to consider amendments to the Jersey Avenue Redevelopment Plan Area to accommodate the Millennium Towers project into the pre-existing plan. On June 14, 2000, the City of Jersey City's City Council adopted those amendments. On June 20, 2000, the Planning Board approved the Site Plan application for the Millennium Towers project.
[2] The amendments to the Jersey Avenue Redevelopment Area plan to include the Millennium Towers project were also subject to this process. There are currently several suits pending against the City of Jersey City in connection with the Millennium Towers amendments to the Redevelopment Plan.
[3] During the September 13, 2000, regularly scheduled City Council meeting, a second reading of Ordinance # 00-112 took place. Public comment was permitted at that time. However, as noted by defendant/petitioners, the public session occurred at midnight.