PER CURIAM.
Plaintiff, Ferry Plaza Urban Renewal, L.P., appeals from entry of an order on April 19, 2002, granting summary judgment in favor of defendant, City of Newark, dismissing plaintiffs complaint and denying plaintiffs motion for summary judgment. We affirm.
Plaintiff proposed to develop and operate a commercial project on premises known as 290 Ferry Street in the City of Newark that fell within the Long Term Tax Exemption Law (the “Act”), N.J.S.A. 40A:20-1 to -20. Under that Act, a municipality is permitted to extend an exemption from taxes on improvements to an entity which proposes to undertake an urban renewal or redevelopment project within the municipality. The Act provides one means of accomplishing the redevelopment and rehabilitation purposes of the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -49. See N.J.S.A. 40A:20-2. These two statutes operate in concert to achieve a common legislative goal — the restoration to economic viability of blighted urban areas. Millennium Towers Urban Renewal Ltd. Liab. Co. v. Municipal Council of City of Jersey City, 343 N.J.Super. 367, 380, 778 A.2d 598 (Law Div.2001).
The Act permits the governing body of a municipality to enter into a financial agreement with an urban renewal entity for the undertaking of a project set forth in a redevelopment plan adopted by the governing body pursuant to the Local Redevelopment and Housing Law. See N.J.S.A. 40A:20-4. Plaintiff qualified as an urban renewal entity, and received approval from defendant for its project. See N.J.S.A. 40A:20-3(g); 40A:20-5; 40A:20-8.
During the term of the tax exemption, the urban renewal entity is only obligated to pay to the municipality an annual service *102 charge, known as a “Service in Lieu of Taxes” or “SILOT,” equal to a certain percentage of the annual gross revenue of the project. See N.J.S.A. 40A:20-12. The term “gross revenue” is defined by N.J.S.A. 40A:20-3(a), as follows:
“Gross revenue” means annual gross revenue or gross shelter rent or annual gross rents, as appropriate, and other income, for each urban renewal entity designated pursuant to this act. The financial agreement shall establish the method of computing gross revenue for the entity, and the method of determining insurance, operating and maintenance expenses paid by a tenant which are ordinarily paid by a landlord, which shall be included in the gross revenue; provided, however, that any federal funds received, whether directly or in the form of rental subsidies paid to tenants, by a nonprofit corporation that is the sponsor of a qualified subsidized housing project, shall not be included in the gross revenue of the project for purposes of computing the annual services charge for municipal services supplied to the project.
In April 1995, plaintiff entered into a financial agreement with defendant evidencing the approved project, pursuant to N.J.S.A. 40A:20-9. Under Section 4.1 of the agreement, in consideration of the tax exemption, plaintiff agreed to pay to defendant a SILOT for municipal services supplied to the urban renewal project in a sum equal to fifteen percent of the annual gross revenues obtained by plaintiff from the project, or $83,371.64, whichever is greater. The duration of the tax exemption was for a period of fifteen years following completion of the project. “Gross revenue” was defined in Addendum A to the agreement as “the annual gross rents and other income which is generated by the urban renewal entity from the operation of the urban renewal project.” Plaintiff listed the SILOT as one of its operating expenses in both an attachment to the financial agreement wherein it calculated its net profit, as well as in earlier submissions to defendant regarding the project.
Following completion of the project, plaintiff entered into numerous leases with retail tenants. In each lease, plaintiff included a provision requiring the tenants to reimburse plaintiff for their proportionate shares of the SILOT due defendant.
During fiscal years 1996 through 1999, defendant included the SILOT reimbursement monies paid to plaintiff by its tenants in calculating plaintiff’s annual gross revenue and, correspondingly, the actual SILOT payment due for each year. Defendant’s decision to include the SILOT reimbursement monies received by *103 plaintiff resulted in plaintiff paying $169,594.80 more to defendant than if the SILOT tenant-reimbursement funds had not been included in “gross revenue.”
On October 24, 2000, plaintiff filed a complaint against defendant in the Law Division seeking reimbursement of a portion of SILOT payments made from 1996 through 1999, contending defendant’s calculation of the SILOT payments improperly included within gross revenue the funds received from plaintiffs tenants as SILOT reimbursements. Both parties moved for summary judgment. An order entered in the Law Division on October 12, 2001, transferred the matter to the Tax Court.
The motions were argued in the Tax Court before Judge Kahn on April 19, 2002. The judge denied plaintiffs motion for summary judgment and entered an order on that date granting defendant’s motion for summary judgment, dismissing plaintiffs complaint. In doing so, the judge stated, in pertinent part:
My view is that the SILOT payments by reason of being reimbursed by the tenant to the landlord in however form they’ve managed to do this is income and revenue to the taxpayer and it is not double-dipping to have SILOT payments paid on that amount.
Using that last argument by the taxpayer that it’s some form of double-dipping, in faet if the tenant is paying it by reimbursing the landlord for it in the next subsequent year when the calculation is in, the taxpayer isn’t paying it. It’s been paid by the tenant. The agreement says the ... the landlord, or the taxpayer in this ease, is supposed to pay this particular item. So it’s not double-dipping if it’s being reimbursed. I think that argument is fallacious.
There is really no clear identification by either the statute, 40A:20-3, or the relevant paragraphs of the agreement that really say anything about this particular point other than the mention of gross revenue. All definitions that I’ve seen about revenue is essentially everything that comes in to the landlord, however made, if it’s an apartment coin machine or whatever. If they are reimbursements, that’s revenue. It’s not defined as income from a taxpaying point of view. It is revenue. Some of it may be deductible or non-taxable, but it’s still revenue.
I disagree with counsel indicating that if the tenant paid the SILOT payments directly that it would somehow not be revenue to the landlord. I don’t think that’s the ease at all. This tax, the SILOT payments, are expenses of the landlord. If in some fashion they’re being reimbursed, whether directly to the landlord or directly to the taxing authority, my view is it’s still revenue upon which a SILOT payment must be made.
On May 30, 2002, plaintiff filed a notice of appeal from the April 19, 2002 order. On May 31, 2002, Judge Kahn issued a letter *104 opinion, amplifying his oral opinion pursuant to R. 2:5 — 1(b). The judge stated, in part, as follows:
N.J.S.A. 40A:20-3 ... clearly provides that all gross revenue, as well as the operating expenses normally paid by the landlord, but actually paid by the tenant, are included in the gross revenue. Gross revenue is defined as “[r]eceipts of a business before deductions for any purpose except those items specifically exempted.” Black’s Law Dictionary, 703 (6th ed.1990). Revenue is defined as “[t]he gross receipts of a business, individual, government, or other reporting entity. The receipts are usually the results of product sales, services rendered, interest earned, etc.” Id. at 1319.
The SILOT reimbursements paid by tenants to the taxpayer qualify as revenue. Taxpayer, pursuant to an agreement with the municipality, paid an annual service charge of 15% of annual gross revenue in lieu of taxes to the municipality. The tenants reimbursed the SILOT payments to taxpayer, and taxpayer is not “out of pocket.” Thus, the 15% charge levied on the reimbursement does not constitute double taxation, as alleged by taxpayer.
Alternatively, if any ambiguity exists in the financial agreement, taxpayer’s own submissions demonstrate that taxpayer considered the SILOT as an operating expense. N.J.S.A. 40A:20-3 and paragraph 1.2(x) of the financial agreement provide that the annual service charge shall include all gross revenue from the project, as well as operating expenses paid by the tenant, which are ordinarily paid by the landlord. Furthermore, in Tiffany Manor Associates L.P. v. Newark, 18 N.J.Tax 190, 194 (Tax 1999), the Tax Court held that the statute, financial agreement and other attachments to the application should be read together to discern the meaning intended by the parties.
On appeal, plaintiff presents the following arguments for our consideration:

POINT I

PURSUANT TO N.J.S.A. 40A:20-3, SILOT PASS-THROUGHS ARE NOT TO BE UTILIZED IN COMPUTING “GROSS REVENUE” FOR PURPOSES OF FINANCIAL AGREEMENTS ENTERED INTO PURSUANT TO THE LONG TERM TAX EXEMPTION LAW OF 1992, AS AMENDED AND SUPPLEMENTED — N.J.S.A. 40A20-1, ET. SEQ.

POINT II

THE INCLUSION OF SILOT PASS-THROUGHS IN GROSS REVENUE CREATES AN UNINTENDED COMPOUNDING EFFECT IN THE NATURE OF A TAX UPON A TAX.

POINT III

TO THE EXTENT THAT THE AGREEMENT IS AMBIGUOUS WITH RESPECT TO THE COMPUTATION OF “GROSS REVENUE,” THAT AMBIGUITY MUST BE CONSTRUED AGAINST DEFENDANT SINCE DEFENDANT DRAFTED THE AGREEMENT.
After analyzing the record in the light of the oral and written arguments advanced by the parties and prevailing law, we are in substantial agreement with the reasons articulated by Judge Kahn *105 in his oral opinion delivered on April 19, 2002 and in his written opinion dated May 31, 2002, in granting defendant’s motion for summary judgment and dismissing the complaint.
Affirmed.