For the reasons we have articulated, the orders appealed from are affirmed.

---

793 A.2d 754

U.S. WATER LLC, PLAINTIFF–RESPONDENT, v. MIDDLESEX COUNTY IMPROVEMENT AUTHORITY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 4, 2002—Decided March 14, 2002.

Before Judges HAVEY, BRAITHWAITE and COBURN.

*William Harla* argued the cause for appellant (*DeCotiis, Fitz-Patrick, Gluck & Cole,* attorneys; *Mr. Harla,* of counsel; *Daniel J. FitzPatrick* and *Gina Bilangi Carle,* on the brief).

*Anthony L. Meagher* of the Maryland bar, admitted pro hac vice, argued the cause for respondent (*Piper Marbury Rudnick & Wolfe,* attorneys; *Mr. Meagher* and *Steven F. Gooby,* of counsel and on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

Plaintiff filed an action in lieu of prerogative writs in the Law Division to obtain copies of documents, which it asserted were public records, from defendant Middlesex County Improvement Authority ("MCIA"). The complaint alleged entitlement to copies of the documents under the Right to Know Law, *N.J.S.A.* 47:1A–1 to –4 ("RTKL"), the New Jersey Water Supply Public–Private Contracting Act, *N.J.S.A.* 58:26–19 to –27 ("WSA"), and the common law. At the same time, plaintiff filed a notice of motion to proceed summarily pursuant to *R.* 4:67 for disclosure of the

documents. The motion, however, was based solely on the RTKL. MCIA filed a cross-motion for summary judgment, contending that the request was premature. The judge denied MCIA's motion and entered judgment for plaintiff. MCIA appealed, obtaining a stay of the judgment from the Supreme Court pending our decision.

We reverse and remand for entry of judgment in favor of MCIA. However, we emphasize that our ruling is limited to the precise issue presented, that is whether the disclosure ordered was premature given the stage then reached in the administrative proceedings being conducted by the MCIA pursuant to the WSA.

## I

MCIA, acting pursuant to its power to provide public services to local municipalities, *N.J.S.A.* 40:37A–54, entered into an agreement with the Township of North Brunswick to solicit proposals under the WSA for private operation of its water supply system. Under the agreement, MCIA is initially responsible for administering the procurement process and negotiating an agreement with a private company.

On February 22, 2000, MCIA published its "Requests for Qualifications and Proposals" ("RFQ/P"). On May 5, 2000, five companies submitted the requested documents, including plaintiff and Azurix North America Corp./JJS Management Services LLC ("Azurix"). MCIA's Project Team reviewed the proposals and recommended that MCIA negotiate first with Azurix. Those negotiations resulted in a proposed contract.

On May 29, 2001, MCIA submitted the proposed contract with Azurix to North Brunswick's governing body, seeking preliminary approval of the terms of the contract and authorization to hold a public hearing. That same day, the governing body adopted a resolution tentatively approving the contract subject to the additional requirement that MCIA successfully negotiate and submit to the Township for its approval an agreement for the private operation of its wastewater system with plaintiff. That negotia-

tion, which has still not been concluded, was being conducted pursuant to the New Jersey Wastewater Treatment Public–Private Contracting Act, *N.J.S.A.* 58:27–19 to –27, a statute which provides procedures that are quite similar to those set forth in the WSA. Finally, the resolution authorized MCIA to conduct a public hearing on the proposed contract with Azurix and to thereafter submit it to the appropriate state agencies for their approval.

On June 18, 2001, apparently acting in response to the Township's adoption of the resolution of preliminary approval of the Azurix contract, plaintiff, relying on the RTKL and common law, filed a written demand with MCIA for copies of the following documents:

> All proposals (including, without limitation, proposal forms and evidence of qualifications and all other material) (the "Proposals") submitted in response to the Request for Qualifications and Proposals for Water Services Agreement for the . . . Township of North Brunswick Water System[ ] As Part of The Middlesex County Improvement Authority Shared Services Program, issued February 22, 2000 by Middlesex County Improvement Authority ("MCIA"), as amended, and

> All reports or other analysis undertaken or received by any employee, agent or consultant of MCIA with respect to any or all Proposals, including (without limitation) any report or analysis prepared by Ernst & Young LLP or any related entity.

By letter dated June 25, 2001, MCIA, relying on the WSA, denied plaintiff's request, asserting that "such information is not available for public inspection at this time."

Plaintiff responded by filing this action and the motion to proceed summarily on August 6, 2001. In its responsive certification, MCIA relied on the assertion that, despite the Township's preliminary approval of the proposed contract, further negotiations might be required if either of the reviewing state agencies required significant modifications. MCIA added that if those negotiations were unsuccessful, it would then have to open negotiations with one of the other private companies that had submitted an RFQ/P. It concluded by arguing that its ability to negotiate could be adversely affected if the document disclosure occurred at the time requested by plaintiff.

The judge rendered a written opinion on September 20, 2001. Although he noted early in his opinion that plaintiff's claim was based on the RTKL, his discussion of law was limited to interpretation of the WSA, which he believed governed the disclosure of the records in question. He concluded that under the WSA full disclosure of all of the requested documents was required as soon as MCIA reached agreement with the private company selected to operate the water supply system. He determined that an agreement had been reached because the Township's resolution recited that MCIA had "successfully negotiated" the agreement. He rejected MCIA's contention that full disclosure should not occur until after the public hearing on the proposed contract, approval thereof by the required state agencies, which could impose additional conditions, and final approval by the Township, which could still reject the contract.

MCIA moved for reconsideration, pointing out, among other things, that despite the language in the Township's resolution describing the agreement as "successfully negotiated," MCIA was still actively engaged in negotiations with Azurix on a number of issues. The motion was denied.

## II

The WSA details the procedures a public entity must follow to privatize its water supply system. It also specifies the documents which are to be released to the public and the timing of their release. Most of the provisions of the WSA are usefully summarized in *We The People v. City of Elizabeth*, 325 *N.J.Super.* 329, 739 *A.*2d 430 (App.Div.1999):

> The Water Supply Act nevertheless provides an elaborate and detailed set of procedures a "public entity must follow" in order to privatize its water supply system. *N.J.S.A.* 58:26–19. The Act requires "public notice" of its intent to enter into a privatization agreement, *N.J.S.A.* 58:26–23a, a specification of the type of "services desired," *N.J.S.A.* 58:26–23b, a review and evaluation process respecting the proposals that are submitted, *N.J.S.A.* 58:26–23c, a written "statement of the reasons" for selecting a particular qualified proposal to be made available to the public along with the proposed contract, *N.J.S.A.* 58:26–23d, and a public hearing at which the local government unit is to "explain the terms and conditions of the proposed contract" and "answer questions raised by prospective consumers and

other interested parties," *N.J.S.A.* 58:26–24c. The Act further provides that a "verbatim record of the public hearing ... [must] be kept open for a period of seven days" to allow interested parties to submit written statements. *N.J.S.A.* 58:26–24d. In addition, the public entity is required to prepare a "written hearing report," consisting of the proposed contract, the statement of reasons for selecting a particular proposal, the stenographic record of the public hearing, the written statements submitted, and "a statement ... summarizing the major issues raised ... and the [local government unit's] responses" to those questions. *Ibid.* Copies of the report are to be made available to interested parties upon request. *Ibid.*

The Act requires that the proposed contract be reviewed by the Local Finance Board, the BPU [Board of Public Utilities] and the DEP [Department of Environmental Protection]. *N.J.S.A.* 58:26–24f. The BPU is to determine whether: (1) the private firm entering into the contract "has the financial capacity and technical and administrative experience to ensure continuity of service," (2) the terms of the contract are reasonable, (3) the franchise customers are protected, and (4) the agreement contains all of the contractual terms required by *N.J.S.A.* 58:26–3. *N.J.S.A.* 58:26–25c. The Local Finance Board is to determine whether: (1) the terms of the contract "materially impair the ability of the public entity to pay principal and interest due on its outstanding indebtedness and to supply other essential public improvements and services," (2) a "concession fee or other monetary benefit" has been paid to the municipality and, if so, whether the purpose of such concession or monetary benefit is to reduce property taxes, and (3) the contract contains the terms prescribed by *N.J.S.A.* 58:26–3. *N.J.S.A.* 58:26–25d. The BPU and the Local Finance Board may approve, conditionally approve or reject the proposed agreement. *N.J.S.A.* 58:26–25c and –25d. The DEP may provide comments respecting the proposal, and must enforce applicable standards as to water supply and water quality. *N.J.S.A.* 58:26–24f; *see also Assembly Local Government Committee, Statement to S.1292* (March 9, 1995).

[*Id.* at 333–35, 739 A.2d 430.]

In short, the only documents that are to be released under the WSA itself are: (1) the proposed, negotiated contract (*N.J.S.A.* 58:26–23d); (2) the public entity's written statement of reasons for accepting that contract (*ibid.*); (3) the stenographic record of the public hearing (*N.J.S.A.* 58:26–24d); (4) the written statements submitted by interest parties at, or within seven days after, the public hearing (*ibid.*); (5) bond counsel's written opinion (*ibid.*); and (6) the public entity's written statement "summarizing the major issues raised at the public hearing and the public entity's specific responses to those issues." *Ibid.*

Three additional aspects of the WSA, not discussed in *We The People, supra,* need to be emphasized:

First, under subsection 23c, which addresses the public entity's review of the proposals submitted by the private companies, the

public entity is charged with the responsibility of "conduct[ing]" the review "in a manner that avoids disclosure of the contents of a proposal to any private firm submitting a competing proposal."

Second, under subsection 23d, if the negotiations with the firm first selected prove unsatisfactory, the public entity "may select another qualified proposal from among those submitted and proceed to negotiate a contract with the private firm that submitted the proposal."

Finally, under subsection 25b, the reviews by either the Board of Public Utilities or the Local Finance Board, following the public hearing, can require further negotiations with the private firm and, if the necessary revisions are substantial, another public hearing in accordance with the provisions set forth in section 24.

### III

The judge's decision ordering disclosure of the documents requested by plaintiff, i.e., the competing private firm proposals and the MCIA's internal analyses thereof, depended, in his view, on the following premises: the contract negotiations had been concluded, and the state agencies were not empowered to reject the proposed contract. Neither premise is correct.

The uncontradicted evidence was that MCIA continued to negotiate with Azurix following the Township's preliminary approval of the contract, and, as a matter of law the state agencies are implicitly empowered to reject the proposed contract when it is eventually presented. *We the People, supra,* 325 *N.J.Super.* at 335, 739 *A.*2d 430 ("The BPU and the Local Finance Board may approve, conditionally approve or reject the proposed agreement. *N.J.S.A.* 58:26–25c and –25d."). Should rejection occur, or a conditional approval unacceptable to Azurix or the MCIA result, MCIA would then be entitled to select another private firm from those submitting proposals and engage in negotiations with it. *N.J.S.A.* 58:26–23d. Since the achievement of a proposed contract prior to state agency action does not mean that further review of other proposals will not be required, the public entity cannot make

public the other proposals without violating subsection 23c, which requires that such review "avoid disclosure of the contents of a proposal to any private firm submitting a competing proposal." *N.J.S.A.* 58:26–23c.

In light of the complex nature of the administrative proceedings required by the WSA, which prior to final approval could result in further negotiations with one or more private firms other than Azurix, the firm first selected, the public interest would hardly be served by the premature disclosure of the MCIA's internal analytical documents. Obviously, access to that information could be harmful to the MCIA's bargaining strategy.

Therefore, we conclude that nothing in the WSA requires disclosure of the documents sought by plaintiff simply because MCIA had reached the point where it was to hold what could be only the first public hearing on the proposed contract. Rather, under this statute, the only documents to be made public before all final approvals are those described above as defined by *N.J.S.A.* 58:26–23d and –24d.

## IV

■ Plaintiff also relies on the RTKL, *N.J.S.A.* 47:1A–1 to –4, but its reliance is misplaced. As the Court observed in *Keddie v. Rutgers, The State University,* 148 *N.J.* 36, 689 *A.*2d 702 (1997), it "has consistently held that the Right to Know Law's definition of a public record is narrow and is to be strictly construed." *Id.* at 46, 689 *A.*2d 702 (citations omitted).

The RTKL defines public records as "all records which are required by law to be made, maintained or kept on file by any" governmental entity or official. *N.J.S.A.* 47:1A–2. Plaintiff has cited no statute or regulation, and we can find none, requiring the MCIA to make, maintain or keep on file its reports and analyses of proposals submitted under the WSA. Consequently, the request for those documents cannot be granted under the RTKL.

Plaintiff, citing *Kuehne Chemical Co., Inc. v. North Jersey Dist. Water Supply Com'n.,* 300 *N.J.Super.* 433, 693 *A.*2d 168 (App.

Div.), *certif. denied,* 151 *N.J.* 466, 700 *A.2d* 878 (1997), argues that the proposals submitted by the private firms, other than Azurix, are records which MCIA must keep on file and are therefore open to inspection by the public. *Kuehne,* however, is distinguishable. That case involved the bidding laws and arose when the Commission refused to disclose bids that had been opened prior to the formal award of a contract. The court applied the RTKL because of "the public bidding requirement of *N.J.S.A.* 58:5–20, which specifically requires that submitted bids be opened publicly, evaluated and maintained." *Id.* at 439, 693 *A.2d* 168. Although the WSA has provisions similar in some respects to the public bidding laws, the statutory procedures are decidedly different. The MCIA is not required to award the contract to the lowest qualified bidder. Rather, it is required to tentatively select one of the private firms in light of a wide variety of standards and then engage in complex negotiations, which may or may not result in a contract, and may well result eventually in negotiations with one of the other submitting firms.

Another difficulty with plaintiff's position is that the WSA, as we have construed it, requires that the competing proposals be kept confidential, at least until all final approvals of the proposed contract have been obtained. Thus, they fit within the exception to disclosure set forth in section 47:1A 2 for documents excluded from the RTKL by "any other statute."

In *Irval Realty Inc. v. Board of Public Util.,* 61 *N.J.* 366, 294 *A.2d* 425 (1972), the Court summarized the standards for access to public records as follows:

A person seeking access to public records may today consider at least three avenues of approach. He [or she] may assert his [or her] common law right as a citizen to inspect public records; he [or she] may resort to the Right to Know Law, *N.J.S.A.* 47:1A–1 *et seq.,* or, if he [or she] is a litigant, he [or she] may avail himself [or herself] of the broad discovery procedures for which our rules of civil practice make ample provision.

[*Id.* at 372, 294 *A.2d* 425.] [1]

---

[1] For completeness, we note that the RTKL has been amended in many respects by the Open Public Records Law, *L.* 2001, c. 404, which, in all parts possibly relevant to this case, becomes effective 180 days after January 8, 2002.

In this case, plaintiff has limited itself to arguments under the WSA and the RTKL. Therefore we have no occasion to address whatever rights it may have under the common law or the rules governing discovery in litigation.

Reversed and remanded for entry of judgment in favor of MCIA.